JEFFERSON COUNTY TRACTION CO. v. WILHELM et ux. (No. 143.)

(Court of Civil Appeals of Texas. Beaumont. March 17, 1917. On Motion for Rehearing, April 25, 1917.)

1. EMINENT DOMAIN ⬥262(4) — COMPENSATION—EXCESSIVE VERDICT.

A verdict in condemnation proceedings on appeal from the award of the commissioners, allowing as damages to the land not taken an amount which was within the damages testified to by defendants' disinterested and qualified witnesses, cannot be set aside as so excessive that it indicates prejudice, though it was nine times the amount of the award made by the commissioners.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 685.]

2. EMINENT DOMAIN ⬥239 — COMPENSATION—DAMAGES—NEGLIGENT CONSTRUCTION.

Where, pending appeal from the award of commissioners in condemnation proceedings, the railroad company had deposited in court double the amount of the award, and had taken possession as authorized by Vernon's Sayles' Ann. Civ. St. 1914, art. 6530, and had thereafter constructed its road across the tract condemned, damages to the land occasioned by the improper or negligent construction of the road cannot be awarded by the jury on the trial de novo on appeal, but the owner would have recourse for such damages in a proper proceeding instituted by him for that purpose, and therefore no inquiry as to the manner of construction which would show negligence is proper.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 615–620, 675, 676, 678, 680.]

3. EMINENT DOMAIN ⬥239 — COMPENSATION—DAMAGES—EVIDENCE—CONSTRUCTION.

In a trial of condemnation proceedings, where the railroad had been constructed pending appeal from the commissioners' award, the condition arising from construction of the road without negligence may be given in evidence.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 615–620, 675, 676, 678, 680.]

4. EMINENT DOMAIN ⬥201 — COMPENSATION — DAMAGES — EVIDENCE — NEGLIGENT CONSTRUCTION—DRAINAGE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 6495, forbidding a railroad to construct a roadbed without constructing the necessary culverts or sluices for the necessary drainage, evidence that the railroad as constructed interfered with the drainage of the land not taken

shows negligent construction, and is inadmissible in condemnation proceedings.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 540½.]

5. EMINENT DOMAIN ⊜⟹201 — COMPENSATION — EVIDENCE — NEGLIGENT CONSTRUCTION —DISAVOWAL.

The fact that defendant in condemnation proceedings specifically stated that he did not claim damages for negligent construction, and contended that the evidence of construction offered did not show negligence, does not render the evidence admissible, where it would, in law, establish negligent construction.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 540½.]

6. EMINENT DOMAIN ⊜⟹202(1) — COMPENSATION—DAMAGES—TIME OF DEATH.

In determining the value of land actually taken as well as damages to the remainder, the evidence should be confined to the market value of the land as it existed when possession was taken by plaintiff, which was the date of the appropriation thereof in contemplation of law.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 541.]

7. EMINENT DOMAIN ⊜⟹200 — COMPENSATION — DAMAGES — NEGLIGENT CONSTRUCTION —PRESUMPTIONS.

At the trial of condemnation proceedings after plaintiff had taken possession and constructed its road, it will be presumed that the road was properly and skillfully constructed, and that whatever was done was necessary and proper, and the court could so expressly instruct the jury.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 540.]

Appeal from Jefferson County Court; D. P. Wheat, Judge.

Condemnation proceedings by the Jefferson County Traction Company against Lew Wilhelm and wife. From a judgment awarding as damages the amount fixed by the jury on appeal from the commissioners, the petitioner appeals. Reversed and remanded, and motion for rehearing overruled.

R. E. Hardwicke, and Townes, Foster & Hardwicke, all of Beaumont, for appellant. Chas. D. Smith, of Beaumont, for appellees.

HIGHTOWER, C. J.· This suit was filed in the county court of Jefferson county, Tex., on July 5, 1913, by appellant, Jefferson County Traction Company, against appellees, Lew Wilhelm and wife, Cora M. Wilhelm, for the purpose of condemning a right of way, consisting of .64 of an acre of land across a 10-acre tract of land owned by appellees. Upon the filing of such petition, the county judge, in compliance with the statute in such matters, appointed B. R. Norvell, Hal G. Land, and E. P. Bennett, as commissioners to hear testimony and assess damages that might be sustained by appellees in consequence of the taking and condemnation of the right of way sought. The commissioners so appointed duly notified appellees of the time and place of the hearing to be had before them, and appellees appeared in person at such time and place, and said commissioners, on July 13, 1913, after hearing and considering the testimony before them, assessed the damages that they. considered would be sustained by appellees by reason of the appropriation of such right of way in the sum of $500. When this award was made by the commissioners, appellant's road had not been constructed across appellees' property. In due time, appellees filed their objections to the award of said commissioners and the case was duly appealed to the county court of Jefferson county, to be tried de novo, as provided by statute.

The award of the commissioners having been contested, appellant, in order that it might, pending the appeal, enter upon the property so condemned,· and construct its road, filed with the county clerk, as provided by law proper bond, and also deposited with said clerk double the amount of the award made by said commissioners, such deposit being made and bond filed on August 2, 1913. Thereafter, about December following, appellant constructed its railroad across the property of appellees, and ever since has operated the same as constructed.

It seems that this cause in the county court was continued from term to term, and was never finally tried until the December term of said court, 1915, and on December 6, 1915, the appellees filed their first amended pleading in the county court, in which they renewed their objections to the amount of the award made by said commissioners, alleging that it was inadequate and unjust, and that as a matter of fact, the appropriation of the right of way and construction of appellant's road in the manner that it was constructed, damaged their property to the extent of $7,960, it being alleged that the quantity of land actually appropriated for right of way purposes by appellant was worth, at the time of its appropriation, $960, and that the damage done to the remainder of appellees' land, not actually appropriated, by reason of the construction of appellant's road, as it was constructed, amounted to $7,000. The 10-acre tract of land crossed by appellant's railroad was alleged by appellees to be 333.8 feet wide and 1,305 feet long, and it was further alleged by appellees that at the time of such condemnation and appropriation of said right of way across said land by appellant, the same was used and resided upon by appellees as their homestead; that said tract of land at that time was high, level, naturally well drained, and well and favorably situated in the town or community known as South Park; that before and at the time appellant constructed its railroad across said tract of land, the lands throughout said community of South Park, including appellees' tract, had a high, fixed, and known market value; that the said town or community of South Park is situated between the city of Beaumont to the north, and the oil field known as Spindletop

to the south, and in fact, embraces the said oil fields on the south, and adjoins the city of Beaumont on the north; that said South Park community was at the time alleged one of the richest, if not the richest, independent school 'districts in the state of Texas, and that it maintains and has for many years maintained one of the finest and highest class schools to be found anywhere; and that its said school and its large interests and industries, and general progressiveness give and gave to all lands situated within its boundaries, and especially lands situated as favorably and as close to said school and main thoroughfares and residence sections, as appellees' said tract 'was situated, a very high market value, etc., and further it was alleged:

"The said tract of land before and at the time the plaintiff [meaning appellant] constructed its road upon and across the same, had a market value of $1,500 per acre, or a value of $15,000 for the entire tract; that the plaintiff constructed its roadbed, ditches, embankments, and fences in a diagonal direction across said tract of land, that is to say the right of way of the plaintiff [appellant] enters the said tract from the south 169 feet from the southeast corner of same, and runs diagonally through the tract to its opposite side at about the center of the north line, thereby leaving upon one side of said roadbed and track and ditches and embankments and fences a triangular or three-cornered piece of ground, and on the other side thereof a similarly shaped piece of ground, the right of way through said tract actually appropriated being 55 feet wide; that the said two small pieces of land separated by the said roadbed and track and ditches and embankments and fences consist now principally of sharp corners and angles, and are unsightly, inconvenient, and practically ruined for any purpose; that nowhere did the plaintiff [appellant] provide any means to go across said roadbed and track and ditches and embankments and fences from one of said triangular or many cornered pieces of ground to the other, and it is necessary, in order to go from one to the other, to seek crossings upon the property of others, or to go clear around by circuitous ways to public crossings and back again; that the construction of said roadbed, track, ditches, and embankments and fences seriously and injuriously interferes with the natural drainage of said land; that said railroad, besides the damage now resulted to the whole property by the construction of same, almost entirely destroyed the market value of some of said land, because there being no crossing over said road, and it being bounded on each side by property which does not belong to these defendants, the same was left with no outlet whatever, that is to say, no way or ways of ingress and egress to and from the same, and is entirely shut in."

We have quoted from appellees' petition in the county court thus far, in order to a clearer understanding of the questions hereinafter discussed. There were further allegations in the petition of appellees, but it is not necessary to here quote them, but it will suffice to say that, taken as a whole, all the contentions above set out and complained of in the portion quoted had the effect, so appellees claim, to greatly reduce the market value of that portion of appellees' tract which was not actually appropriated by appellant for railroad purposes.

The verdict of the jury on the trial de novo in the county court was in favor of appellees for the sum of $4,640, as against the award of the commissioners theretofore made in the sum of $500, as before stated. Thus it will be seen that the disparity between the amount as awarded to appellees by the commissioners and that awarded by the verdict of the jury was very great.

[1] Appellant's first assignment of error is as follows:

"The verdict of the jury is excessive, and shows that same was prompted by prejudice against the plaintiff [appellant], in that the jury allowed to defendants [appellees] not less than $3,680 as damages to the remainder of their land by reason of the appropriation by condemnation of a portion, and said sum is wholly unreasonable and unjust and not supported by the evidence, and clearly shows that the jury was improperly influenced and prejudiced in rendering its verdict."

The proposition under this assignment is:

"The verdict of the jury and judgment based thereon should be set aside whenever it is shown that it is excessive, unreasonable in amount, or was prompted by prejudice against the party against which it was rendered."

Under this proposition, there is a statement, of course, showing the evidence introduced by both sides bearing on this point, and this statement is very long, and consists of nearly all the testimony that was introduced, pro and con, on this point, and we could not attempt, without prolonging this opinion to an unreasonable length, to set out all of this evidence. Suffice it to say that approximately a half dozen witnesses testified upon this point for appellant, and a like number for the appellees, most of appellant's witnesses placing the value of appellees' said tract of land at figures ranging from $350 to $500 per acre, at the time of the condemnation proceedings had below, while appellees' witnesses testified that the market value of the 10-acre tract ranged between $1,000 and $1,500 an acre at the time the condemnation proceedings were had below, and before the construction of appellant's railroad across the same. The witnesses for both sides were shown to be fairly well qualified to give their opinions touching the market value of this property, as they did, and most of them on both sides were quite familiar with the property; and, if we leave out of question the testimony of the appellees themselves, being interested parties, and consider only the testimony of other witnesses produced by them, and who seem, so far as this record shows, to be disinterested parties, we still are confronted, regarding this assignment, with the proposition that the testimony as to the value of appellees' property prior to the construction of appellant's railroad and the damage thereto by reason of its construction is pretty evenly divided, and we cannot say that it is manifest that the verdict of the jury was the result of prejudice, or other improper motive, and under the well-established rule in this state, we do not feel authorized to say

that the verdict of the jury was excessive, as complained by appellant, though, to say the least, the verdict seems to us to be very large. But, in view of the fact that we have decided this case must be reversed on another assignment made by appellant, we will not discuss the question of excessive verdict further, and it may be that a different result will be obtained upon another trial.

This case was tried in the court below by the parties hereto upon theories diametrically opposed to each other, as to the law that governed this character of proceeding. The appellant had the theory that appellees were only entitled to recover the market value of the strip of land that was actually appropriated for right of way purposes at the time of the appropriation thereof, and in addition thereto, such damages, if any, as resulted to the remainder of the tract, by reason of the appropriation of the strip for right of way purposes, and the use to be made thereof by appellant in the operation of its road, and that this value of the part actually taken must have been arrived at as it existed on August 2, 1913, on which day appellant complied with the award of said commissioners by filing its bond, and depositing double the amount of the award, as required by statute; that the right on the part of appellant to enter said property accrued on that day, and that no subsequent use of the property by appellant, and that no actual construction or works placed thereon, should have been taken into consideration by the jury in the trial of the case in the county court, some 16 or 18 months later, and that in arriving at the damages, if any, caused to the remainder of said tract, not actually appropriated by appellant, the value of same must have been inquired about as it existed on the 2d day of August, 1913, and that no works and no part of the actual construction of appellant's railroad should have been looked to or testified about before the jury as the same existed at the time of the trial in the county court. On the other hand, it seems to be the contention of appellees that they were entitled to recover the market value of the strip actually appropriated for right of way purposes, as such value existed on August 2, 1913, and, in addition thereto, that they were entitled to recover damages to the remainder of the tract by reason of the appropriation by appellant of the right of way strip as the value of such remainder existed at the time appellant constructed its roadbed across said tract, some 16 months later.

[2] After full and careful consideration of the many authorities cited by counsel in their briefs for both sides, we have reached the conclusion that appellant's theory, as above stated, was the correct one, in so far as some of the items of damage pleaded and proved by appellees was concerned. It seems to be now settled, beyond controversy, by the decisions of the appellate courts of this state, that in a condemnation proceeding, as this

was, damages to land not actually taken, and which may result on account of improper and negligent construction of its works by the condemnor, cannot be recovered by the owner of land, or even considered by the court or jury for any purpose, but the owner of the land so damaged would have his recourse in a court or tribunal having jurisdiction of the amount claimed in a proper proceeding instituted for that purpose. Sayles' Civil Statutes, art. 6530; G., C. & S. F. Ry. Co. v. Lyons, 2 Willson, Civ. Cas. Ct. App. § 139; T. & P. Ry. Co. v. Matthews, 60 Tex. 215; Railway Co. v. Cave, 80 Tex. 137, 15 S. W. 786; Railway Co. v. Ruby, 80 Tex. 172, 15 S. W. 1040; Fordyce v. Wolfe, 82 Tex. 239, 18 S. W. 145; Allen v. Railway Co., 25 S. W. 826; Railway Co. v. Hunnecutt, 18 Tex. Civ. App. 310, 44 S. W. 535; Railway Co. v. Elliott, 148 S. W. 1125; Routh v. Traction Co., 148 S. W. 1152; St. Louis R. Co. v. Barnes, 162 S. W. 373; Railway Co. v. Pape, 62 Tex. 313; Railway Co. v. Moore, 51 Tex. Civ. App. 205, 111 S. W. 758; Gregory v. Railway Co., 21 Tex. Civ. App. 598, 54 S. W. 617.

While it is true that none of the above-cited cases go so far as to hold that it would be improper to admit evidence showing any part of the actual construction by the condemnor, subsequent to a lawful entry on the property condemned, still all of them, as well as many other authorities of this state, clearly hold that in a condemnation proceeding, nothing can be recovered by the landowner, and no inquiry can be had because of any negligence on the part of the condemnor by reason of the manner in which the works are constructed across the owner's land, and the reason of the rule for holding the landowner to such narrow limits in introducing testimony showing the works as actually constructed by the condemnor is because a jury might, in some instances, allow the owner damages which the jury thought was occasioned him in consequence of some negligent act or improper construction of his works by the condemnor.

[3] But, as stated above, we would not be willing to say, without well-established precedent for the proposition, that the owner of land in a condemnation proceeding should not be permitted to show anything touching the actual construction of the works by the condemnor before final adjudication of the owner's claim, even where the condemnor rightfully enters upon the land, as was done in this case, and has his works constructed before final trial of the condemnation proceeding. We think that appellant's counsel go too far on this point, but we do believe that if the landowner in such a proceeding attempts to show a condition of affairs arising out of the construction of his works by the condemnor, which necessarily and at once shows negligence on the part of the condemnor, then it would be error to permit the landowner to show such state of affairs; and that this ought to be and is the rule, even

though it be not specifically alleged by the landowner, or contended by him that such state of affairs so complained of constituted negligence on the part of the condemnor.

[4] Now in this case, on the trial below, among other things, it was alleged by appellees, in substance, that in consequence of the manner in which appellant's railroad was constructed across his land, the height of the embankment, the depth of the ditches, the angle, etc., at which the same crossed his land, the natural drainage of that portion of his land not actually taken had been seriously interfered with, and impaired, and in following up this allegation by the evidence, witnesses were permitted to testify that before the construction of appellant's road, appellees' land was high and level, and its natural drainage was good, but that since the construction of the road, and in consequence thereof, water was frequently caused to stand upon the remainder of his land, and that at times pools or lakes would form, which had never been the case theretofore, all of which went to show that appellant was guilty of negligence as a matter of law. It is true that nowhere in the petition of appellees was the word "negligence" used, but when they alleged that the natural drainage of their land had been seriously and injuriously interfered with, by reason of the manner in which appellant's road was constructed across the land, and that in consequence of such interference with drainage, the market value of their land had been greatly damaged and reduced, they at once charged appellant with negligence, which had caused them damage, to wit, had clearly reduced the market value of their land. We believe that in view of the statute on this question, it was entirely unnecessary for appellees to say that such conduct on the part of appellant constituted "negligence," because the statute itself makes such conduct on the part of a railroad negligence, and when the facts are alleged, which the statute says shall constitute negligence, there would be no necessity for the conclusion of the pleader to that effect. Article 6495, Vernon's Sayles' Texas Civil Statutes, reads:

"In no case shall any railroad company construct a road bed without first constructing the necessary culverts or sluices, as the natural lay of the land requires, for the necessary drainage thereof."

It seems to us that there is no escape from the conclusion that when appellees alleged, as they did, that the construction of appellant's roadbed, etc., across their land seriously interfered with the natural drainage of the same, they alleged negligence on the part of appellant, and sought to recover damages therefor, and this allegation, as stated before, was followed up by direct proof on the part of appellees.

[5] It is also true that the record shows that counsel for appellees declared emphatically during the trial in the court below that appellees were not claiming damages for negligence on the part of appellant, and seemed to recognize the rule that damages so sustained, if any, could not be recovered in this proceeding, and in counsel's brief in this case, he strenuously contends, and with much ability and plausibility, that appellees had the right to recover whatever diminution in market value their land sustained in consequence of its natural drainage being interfered with by reason of the construction of appellant's road, and claims that it does not necessarily follow that appellant was guilty of negligence because it constructed its road in such manner as to interfere with the natural drainage of appellees' land, but after careful consideration, we are driven to the conclusion that appellee is wrong in his contention, and that the statute itself says that appellant was guilty of negligence, which caused damage to appellees, if their allegations and proof on this question of the interference with the natural drainage of their land was true, and we are of the opinion that appellees should not be permitted to thus indirectly do what the rule, as it obtains in this state, forbids them directly to do. In other words, we believe that appellees ought not to be permitted to allege a certain state of facts and introduce proof thereunder, which clearly show that damages were sought to be recovered, because of negligence on the part of appellant, merely because appellees did not themselves specifically claim that such state of facts constituted negligence. Gregory v. Railway Co., 21 Tex. Civ. App. 598, 54 S. W. 617; Kirby v. Railway Co., 39 Tex. Civ. App. 252, 88 S. W. 281; Railway Co. v. Moore, 51 Tex. Civ. App. 205, 111 S. W. 758; Railway Co. v. Barnes, 162 S. W. 373.

We are not unmindful of the contention made throughout the argument by appellees' counsel, and also in his brief, that the cases just above cited are easily distinguishable from this case, in so far as they treat the question of damages to land by reason of the failure on the part of the railroad company to construct proper culverts, sluices, etc., so as to not interfere with the natural drainage of the land of another; and, while it is true that in some of these cases damages to crops were sought to be recovered by reason of an overflow alleged to have been occasioned by the failure of the railroad company to have proper culverts and sluices, still the principle of law and the rule of evidence contended for by appellant in this case is announced and adhered to in these cases, and we think that the principle so announced is applicable here.

We think that the trial court ought to have sustained appellant's special exception to that portion of appellees' amended answer, alleging, in substance, that the market value of their land was diminished in consequence of the natural drainage being interfered with

by reason of the construction of appellant's roadbed, and also, that the trial court committed error in admitting evidence offered by appellees to the effect that the natural drainage of appellees' land had been obstructed or interfered with on account of the construction of appellant's road. And while we have not mentioned or discussed in their numerical order appellant's several assignments raising this point, we think that all such assignments ought to be and they are sustained.

[6] While we agree with the contention of appellant to the effect that in arriving at the amount of damages that appellees should be allowed to recover for that portion of their land actually taken, as well as for the diminution in value of the remainder, the evidence should be confined to the market value of such land as the same existed on August 2, 1913, which was the date of lawful taking and appropriation thereof, in contemplation of our Constitution and statute on the subject, still we do not think that it was improper to permit appellees to introduce testimony, as was done, showing the actual construction of appellant's railroad across the land, as the same existed when first completed.

[7] Of course, it should be and must be assumed in this proceeding that appellant's road was in all respects properly and skillfully constructed, and that whatever was done by appellant in that connection was necessary and proper, and that appellant was not guilty of any negligence or wrong whatever in the construction of its road and works, and we think it would be entirely proper for the court to so expressly instruct the jury on another trial of this case.

We have considered all assignments of error made by appellant, and overrule them all, except those above sustained, and because of the error of the trial court there pointed out, the judgment of the trial court is reversed, and this cause remanded.

### On Motion for Rehearing.

At a former day of this term, the judgment of the trial court in this cause was reversed, and the cause remanded, and in due time appellees filed their motion for rehearing. We have carefully considered the motion, and have reached the conclusion that same should be overruled.

Counsel for appellees have suggested that our opinion in this case is susceptible of the construction that counsel contended that appellees were entitled to recover the difference in the market value of the remainder of the land before construction and at the time of trial below, and that all items of injury occurring up to the time of trial were to be legitimately considered. We do not think that the opinion is, in fact, susceptible of such construction, but at the request of counsel, we here now state, in his own words, his contention on this point:

"The landowner is entitled to recover the difference in the market value of the remainder of his land just before and just after the construction of the works, or the difference in value with or without the public works thereon, irrespective of the time or the method by which the damages were arrived at and assessed."

We were unable to agree with counsel on this point, in view of the facts in this case, and we think our reason is sufficiently stated in the opinion.

The motion for rehearing is overruled.