**HENDERSON COUNTY LEVEE IMPROVEMENT DIST. NO. 3 v. WILLIAMS et al. (No. 7354.)**

Court of Civil Appeals of Texas. Austin. May 9, 1929.

Rehearing Denied June 12, 1929.

W. D. Justice, of Athens, James Young, of Kaufman, and O. B. Freeman and Eckford & McMahon, all of Dallas, for appellant.

John H. Sharp, of Ennis, and Bishop & Holland, of Athens, for appellees.

BAUGH, J. Appellant is a duly organized levee improvement district under the provisions of chapter 6, arts. 7972 to 8042, R. S. 1925. Upon the failure and refusal of the commissioners of appraisement to allow damages to appellees, who claimed that injuries would result to their respective lands in carrying out plans adopted by said improvement district, each of the appellees, eight in number, appealed from the action of said commissioners to the district court, as provided for in article 7995, R. S. 1925. No question is raised as to the regularity of these appeals, filed in said district court in April, 1926; each case being docketed separately. In February, 1928, each claimant filed an amended petition, alleging damages, permanent or temporary, to their respective lands, and some of them sought additional damages for crop losses in 1927. On motion of said claimants, appellees here, all of said cases were consolidated and tried to the court without a jury. After an extensive hearing, the court awarded damages to the several claimants in varying amounts, aggregating approximately $51,000; hence this appeal. No findings of fact nor conclusions of law were requested.

The grounds of recovery alleged in all said amended petitions were substantially as follows: That said levee improvement district undertook, through construction of levees and ditches, to divert the flood waters of Cedar, Walnut, and Turkey creeks, tributaries to the Trinity river, from their accustomed channels and direct same in a new channel across valleys and through hills into the Trinity river, and also to divert the waters of Trinity river in a similar manner from its natural channel into a new and different channel; that in doing so said district dammed up the old channels of said streams and restricted their flood waters to narrower channels at a higher level, and at a reduced fall, thus impeding their progress in receding, and causing such waters to overflow lands of said claimants not theretofore overflowed, and to stand and remain upon such lands, even where overflowed before, for a much longer period than they ever did before the construction of such improvements—all of which facts caused the damages complained of. The claimants also alleged in their amended petitions that appellant's whole plan and scheme of reclamation was impractical and unscientifically planned, and that the improvements undertaken thereunder had been unskillfully and negligently constructed, in that they stopped up the old channels of said streams without making adequate diversion channels to carry off the flood waters of these respective streams. They further alleged

that the improvements as made were not in compliance with the "plan of reclamation" of said district; that said work was begun in 1926, continued during 1927, and was still in progress at the time of said trial in February, 1928.

The lands involved are situated in the valleys of Cedar, Turkey, and Walnut creeks above the places where same formerly emptied into the Trinity river and above the diversion levee. The crop damages claimed occurred from overflows in the fall of 1927.

The first contention made by appellant is that the amended petitions clearly show that claimants are attacking the plan of reclamation of said district; that such attack was not made until some 19 months after said appeals had been perfected; that such plan of reclamation must have been attacked, if at all, under article 8034, R. S. 1925, within 15 days after its approval by the state reclamation engineer, and by a suit brought in the district court for that purpose; and that therefore the district court had no jurisdiction of the cause asserted in the amended petitions.

An examination of articles 7987, 7989, 7990, 7993, and 7995, R. S. 1925 (these statutes are too long to set out here), authorizing the formation, and directing the procedure in the organization, of levee improvement districts, discloses, in our opinion, that article 8034 has no application to the character of suit here involved. That article clearly relates to the action of the state reclamation engineer in approving or disapproving the plan of reclamation designated in article 7990, which must, under said statutes, be finally adopted before active steps can be taken to carry it out. That article authorizes and contemplates a speedy action with reference to the general plan only, which must be settled before actual work on its consummation is begun, and of necessity could have no application to damages which are, under said statutes, determinable long after the 15-day period prescribed in that article has already elapsed. Wilmarth v. Reagan (Tex. Com. App.) 242 S. W. 730. Appellees make no attempt to change or defeat the plan of reclamation to which article 8034 applies, nor to interfere with its prosecution in any manner on the ground that such plan was impractical and unscientific. The only relief sought by claimants was damages for injuries to their lands.

Nor did the trial court err in consolidating said suits. Article 7995, authorizing such appeals, expressly provides that same may be consolidated. It is true that in their amended petitions claimants did set up negligence in the levee construction; yet the main purpose and object of the appeal remained the same—i. e., compensation for injuries to their lands resulting from said project. The district was we think liable for injuries to property resulting from the negligence of its

officers and agents in carrying out its plan of reclamation. Such was the rule announced in Holderbaum v. Hidalgo County Water Imp. Dist. No. 2 (Tex. Civ. App.) 297 S. W. 867, with reference to water improvement districts which are in many respects similar to levee improvement districts. The Supreme Court affirmed that case, after granting a writ of error, but declined to pass upon this exact issue. See 11 S.W.(2d) 506. We think the discussion of the Court of Civil Appeals sound, however, and that it announces the correct rule of law.

■ Nor did the court in our opinion err in consolidating in one suit claims for damages arising from alleged negligence of construction, with those arising from the carrying out of said project had there been no negligence. We do not construe the language of article 7995, that "the only questions to be considered on such appeal shall be whether just compensation has been allowed for property taken or whether property damages have been allowed for property injured or whether any damages are recoverable at all," as excluding property damage resulting from negligent construction. It was the manifest purpose of that provision of article 7995 to foreclose and prevent, in such appeal, an attack upon some other phase of the reclamation project, such, for instance, as that contemplated in article 8034. That same article further expressly provides that "the trial in the district court shall be de novo and proceedings shall be in accordance with the laws of this state in suits for damages," etc. Under the Constitution and the laws of the state, claimants were entitled to property damages for injuries if any done to their lands (Const. art. 1, § 17; R. S. art. 7981), and, the district court having properly acquired jurisdiction of appellees' claims for that damage, all issues relating to such property damages arising between the same parties, with reference to the same subject-matter, and resulting from the prosecution of the same enterprize, should have been adjudicated in one suit. We find no abuse of the trial court's discretion in the premises. R. S. art. 2160; Bolton v. De Leon (Tex. Civ. App.) 283 S. W. 213.

Appellant cites us to a line of cases of which Jefferson County Traction Co. v. Wilhelm (Tex. Civ. App.) 194 S. W. 448, is representative, holding that, where a railroad company has undertaken to condemn property for a right of way, under the general condemnation statute (title 52, art. 3264 et seq.), and has made a deposit and executed a bond as required by law, and where claimant has refused to abide the award of the commissioners, such claimant cannot, upon a trial of the issues of his property damage, set up negligence subsequently occurring in the construction of the railroad. These cases hold also that, where the railroad has complied with that law, the issue of damages and the amount of same must be confined to the injury to the property as of the date the deposit is made and bond filed by the railroad company, and that subsequent items of damage or the value of such property at a subsequent date cannot be inquired into. Appellant contends that, under such holdings, the levee district having filed its bond as provided for in article 7995, protecting appellees herein, only the damage to their lands as of that date, to wit, April, 1926, could be considered; and then only such damage as would arise from properly carrying out the plan of reclamation.

■ This contention cannot be sustained for two reasons: First, because a separate and distinct method of procedure for condemnation, awarding of damages, etc., in levee improvement districts, is prescribed by statute from that relating to railroads, and for the exercise of the power of eminent domain generally. In the Wilhelm Case, supra, as in all railroad condemnation suits, objections of a property owner to the award of the appraisers are filed in the county court, and the case is there tried. In the Wilhelm Case, $7,960 damages were claimed, which the court found to be based upon a claim of negligence in construction, and in which $4,640 was awarded. If the claimant has sought damages for negligence alone, such suit must have been filed in the district court, which had, under said statute, no jurisdiction over the appeal in the condemnation proceeding, and the two suits could not of course have been consolidated.

■ In the instant, on the other hand, the procedure in such appeals is specifically governed by another statute which provides for an appeal to the district court from an award of the appraisers; for a trial de novo there "in accordance with the laws of this state in suits for damages," wherein the issue to be tried is that of property damage. If appellees herein, while their appeals were still pending in the district court, there having intervened some nineteen months since such appeals were perfected, had filed separate suits in the same court against the appellant for damages to the same lands because of its negligent carrying out of the same plan of reclamation, in order to avoid a multiplicity of suits, we think the trial court could and should have consolidated such suits with those on appeal. If the district was liable for such negligence, appellees were entitled to bring such suits; and we can see no good reason why they should not be allowed to set up in the same suit, by amendment, grounds of recovery subsequently arising which they could assert in a separate suit and then be entitled to have same consolidated with their suits then pending, of which the court had unquestioned jurisdiction.

■ Appellant's contention cannot be sustained, secondly, because it is uncontroverted

that, after the district had filed its bond, the plan of reclamation then on file was changed during the pendency of claimants' appeals, and work prosecuted under such change in plans after the appraisers had made their report, and without notice to, or hearing of, the claimants as to such changes. Manifestly the claimants could not be restricted to compensation for injuries to their lands as of a certain date, under a definite plan of reclamation, when such plan was subsequently changed, and certainly is this true if such changes resulted in added injuries to their lands.

The next question raised relates to damages for permanent injuries to claimants' lands, and the amount thereof, and to the award of compensation for crop losses in 1927. The amount and character of the damages awarded the various claimants may be tabulated as follows:

verted that most of said lands were subject to overflow prior to the reclamation work when the streams in question were at flood stage, and that such overflows occurred at different seasons of the year; claimants' chief contention being that because of the levee construction such flood waters were caused to rise higher and remain longer upon the lands than ever before. Considering the testimony in favor of appellees and the uncontroverted testimony of the engineers and other witnesses of appellant, the following conditions were shown: That a long ditch and levee had been constructed across Cedar, Walnut, and Turkey creeks, which diverted all of their flood waters across and through hills into the Trinity river. That the bottom of this ditch through the hills was not cut down to the level of the beds of said streams, nor was it wide enough to provide as much outlet for said waters as the streams them-

| Name. | Appropriated No. Acres. | Amount. | Land Damaged No. Acres. | Amount. | Less Acres. | Damage to Crops. |
|---|---|---|---|---|---|---|
| Flagg | 10 | $400 | 32 | $ 500.00 | 10 | |
| | 1 | 40 | 78.5 | 500.00 | 1 | |
| | | | 143.5 | 3,105.00 | | $ 515. |
| Total | 11 | 440 | 254.0 | 4,105.00 | 11 | 515 |
| Linder | 14.2 | 565 | 96 | 500.00 | 14.2 | |
| | | | 101 | 500.00 | | |
| | | | 117.7 | 500.00 | 7 | |
| | | | 385 | 7,700.00 | | 1,030 |
| Total | 14.2 | 565 | 699.7 | 9,200.00 | 21.2 | 1,030 |
| Bartlett | | | 359 | 10,770.00 | | 1,442.80 |
| Williams | | | 495 | 7,425.00 | | |
| T. Wolfe | | | 96 | 1,920.00 | | |
| J. F. Merritt | | | 175 | 3,500.00 | | |
| Mrs. J. L. Evans | | | 100 | 2,000.00 | | 412 |
| Mrs. Adele Evans | | | 358 | 7,160.00 | | 600 |

The trial court in his judgment did not state whether the damages adjudged are for permanent or temporary injuries to said lands. A reading of the voluminous testimony however, compels the conclusion that such award, except, of course, for land taken and crop damage, was on the basis of permanent injuries to said lands, and except as to a portion of the lands of Flagg and Linder.

As stated by the Supreme Court in Owens v. Navarro County Levee Imp. Dist. No. 8, 115 Tex. 263, 271, 280 S. W. 532, 535, "The measure of damages for permanent injury to the land is the difference in the market value just prior to the time of the levee improvements and immediately subsequent to such improvements." See, also, Id. (Tex. Civ. App.) 281 S. W. 579. In the instant case there was complete unanimity in claimants' testimony that the market value of their respective lands prior to the construction of said levees was $75 per acre, and that said lands were worthless at the time of the trial. We find no testimony attempting to fix a definite market value of said lands after the construction of such levees. It was not contro-

selves formerly afforded. This condition, if permanent, would produce the results complained of by appellees. It was also shown that the channel of the Trinity river, below the influx of this diversion ditch, was completely dammed, and another ditch and levee constructed which diverted the waters of Trinity river from their accustomed course, and returned them to its old channel some 5 miles below, shortening the river channel nearly 2 miles. The bottom of this diversion ditch as originally constructed, at its upper end, was, according to some of the evidence, some 12 to 15 feet higher than the bed of the river channel, thus giving the new channel of the river an added fall of 17 feet more in 5 miles' flow than it formerly had in approximately 7 miles in the old channel. It would also raise the low-water stage of the river immediately above that point a like number of feet. This construction work was done during 1926 and 1927, and was still going on at the time of the trial in February, 1928. The uncontradicted testimony of the engineer for appellant levee district showed that the construction work of these levees had not

been completed; that the state reclamation engineer had not approved the contractor's work as having carried out the plan of reclamation; that the time in which the contractor had in which to dig said diversion ditch to its required depth had not expired; that, under the engineer's estimate, removal of 440,000 cubic yards of dirt was required on the Trinity river diversion channel, of which only 255,000 had actually been removed by machinery; and that said contractor would be required to dig such ditch or new channel to the required depth and width before the expiration of his contract, unless erosion from flood waters passing through the new channel cut it to the required depth for him in the meantime; and that his work must be approved by the state reclamation engineer before he was released, which had not yet been done in this case. Engineers also testified, without contradiction, that rapid erosion in said ditches had already taken place; that such erosion begins at the lower end of the diversion channel and cuts back gradually to the upper end; that, with the amount of flood waters normally flowing down the streams in question, erosion therefrom would, in two or three years at most, widen such channels and deepen same to the level of the beds of the old channels of said streams, and carry off the flood waters as rapidly and at as low a level as occurred before the construction of said levees.

It is manifest that the trial court considered as being permanently injured the lands of the claimants covered by the flood waters of said streams in the overflow of October, 1927. The undisputed evidence shows that on October 2, 1927, there occurred at Kaufman, within the watershed of Cedar creek, a rainfall of 6.71 inches, which flooded all the overflow valleys of that stream; that this flood destroyed the crops of other people in that valley above the levee improvement area, and regardless of the levee construction would have probably overflowed at least a considerable portion of the lands here involved. Just what damage such overflow would have caused the crops then matured standing on said lands had there been no levee constructed, is, of course, problematical. If their crops would have been damaged or destroyed in any event, the appellant could not be held liable for that item of damage claimed. However, the record discloses sufficient evidence to sustain the court's award for crop losses in 1927 as caused by the levee construction, and that part of said judgment will not be disturbed.

It is obvious also, that the trial court did not accept the market values placed upon their lands by appellees. There was testimony by appellant's witnesses fixing the market values of these overflow lands in question, prior to the construction of said levees, at from $10 to $20 per acre, most of it at $15 to $20 per acre. A scrutiny of the court's judgment reflects that, except as to certain portions of the lands of Flagg and Linder, some of which was below the levee and not overflowed, the average award for all the lands involved was approximately $20 per acre; damages to some 1,100 acres being fixed at exactly $20 per acre. It appears, therefore, that the trial court concluded that the injury to the lands was permanent, and that their market value was totally destroyed, as testified to by appellees, but that such market value prior to construction was from $15 to $20 per acre, as stated by appellant's witnesses, who appeared to have been disinterested.

Under these circumstances, and in view of the fact that the plan of reclamation, as originally adopted, and, as prosecuted under changes authorized by the state reclamation engineer, had not been completed at the time of the trial, that the work done had not received the final approval of said engineer, and in view of the uncontradicted testimony of expert witnesses that in a limited time erosion from flood waters, whose flow in the Trinity river diversion channel at least had been accelerated, would cut the new channels to the levels of the old, and again permit the normal escape of such flood waters, we think the record wholly fails to disclose permanent injuries to appellees' lands. And this obviously being the basis upon which the trial court rendered his judgment, we must reverse and remand the case as to those issues. Appellees were entitled, however, to recover temporary damages to lands or crops caused by the construction of such levees which they would not have suffered but for such construction. No complaint is made of the award to appellees Flagg and Linder of compensation for their lands taken and appropriated for levee construction purposes. The trial court's judgment is affirmed as to these items, and as to the crop damages awarded. In all other respects said judgment is reversed, and the cause remanded for another trial.

Affirmed in part, and in part reversed and remanded.

On Motion for Rehearing.

In their motion for rehearing, appellees earnestly insist that there was evidence to show permanent injuries to their lands, though such injuries may not be perpetual; that the diversion levees were permanent; that the narrowed channel for the outlet from Cedar creek was permanent; and that the change of the course of the Trinity river was permanent. Conceding these contentions to be true, and that injuries were caused to their lands in so far as the turf and timber thereon are concerned, the extent and continuation of such injuries depend upon the conditions prevailing upon the completion of the improvement project. If, when completed, the flood waters are carried off as rapidly and at as low level as they were before such project was started, appellees' lands, except as to injuries

caused meantime, would be as usable as ever. Nor does it necessarily follow that confining the flood waters of Cedar creek to a channel from 800 to 1,200 feet wide between levees, when they formerly spread out over a valley some 10,000 feet wide, would retard their flow. That would depend entirely upon the depth of the channel. The record clearly shows that part, if not much, of the continued flooding of appellees' lands was due to backwater from the Trinity river, occasioned by the fact that the diversion channel of that river lacked some 12 to 15 feet of being as deep as the old channel. That condition was to be eliminated before the completion of the project. It is obvious that a straight channel 5 miles long would carry off water more rapidly than a winding channel 7 miles long between the same points with the same fall. When the project is completed, the Trinity river flood level should therefore be reduced below what it was before such construction, all of which would inure to the benefit of appellees. As stated in our original opinion, the trial court obviously based his damages on the high-water stage reached by the flood waters of October, 1927, before the completion of the project, and assessed damages on the basis of a total loss of most of the lands then overflowed. Neither of these hypotheses can be sustained by the evidence. Permanent injuries may have resulted to said lands by reason of the conditions complained of, but certainly not a total loss; and the extent and duration of such injuries must be based upon the conditions prevailing after the completion of said project.

Motion overruled.

Overruled.