## WILLIAMS et al. v. HENDERSON COUNTY LEVEE IMPROVEMENT DIST. NO. 3.

Motion No. 9529;  No. 1209—5521.

Commission of Appeals of Texas, Section B.
April 19, 1933.

For original opinion, see 36 S.W.(2d) 204, which reversed in part judgment of the Court of Civil Appeals 19 S.W.(2d) 197.

W. R. Bishop and Sam Holland, of Athens, and John H. Sharp, of Ennis, for plaintiffs in error.

Justice & Sigler, of Athens, James Young, of Kaufman, and O. B. Freeman and Eckford & McMahon, all of Dallas, for defendant in error.

SHORT, Judge.

In its motion for rehearing the defendant in error chiefly complains of the failure in our opinion to discuss the assignment of error which the Court of Civil Appeals over-ruled in its opinion claiming, very properly, that it had the right to have the Supreme Court pass upon these assignments of error, which the Court of Civil Appeals overruled, since the judgment of the trial court was affirmed and that of the Court of Civil Appeals reversed by the opinion written by this section of the Commission.  19 S.W.(2d) 197; 36 S.W.(2d) 204.

Defendant in error in its supplemental motion for rehearing complains that the Commission of Appeals erred in reversing the judgment of the Court of Civil Appeals because the judgment of the trial court should be reversed and the cause remanded for the reason that the trial court erroneously overruled the special exceptions of the levee improvement district to those parts of the plaintiff's petitions alleging negligence in the formulation and execution of the plan of reclamation and erroneously admitted evidence showing negligence in carrying out the plan of reclamation. In support of this contention, the following authorities are cited:  Gregory v.

Gulf & Interstate Railway Company, 21 Tex. Civ. App. 598, 54 S. W. 617; North Texas Traction Company v. Yates, 39 Tex. Civ. App. 114, 88 S. W. 283; Jefferson County Traction Co. v. Wilhelm (Tex. Civ. App.) 194 S. W. 448; City of San Antonio v. Fike (Tex. Civ. App.), 211 S. W. 639; Fort Worth & Denver South Plains Railway Co. v. Gilmore (Tex. Civ. App.) 2 S.W.(2d) 543; Throckmorton County v. Howsley (Tex. Civ. App.) 28 S.W.(2d) 951; Revised Civil Statutes Texas 1925, articles 7995, 3265, 3266, 3267, 3268; 20 Corpus Juris, 778; 10 Ruling Case Law, title Eminent Domain, § 191; Fremont, Elkhorn & Missouri Valley Railroad Co. v. Whalen, 11 Neb. 585, 10 N. W. 491; Fremont, E. & M. V. R. Co. v. Ward, 11 Neb. 597, 10 N. W. 524; O'Neill v. San Pedro, etc., Railroad, 38 Utah, 475, 114 P. 127; Buckhannon & Northern Railroad Co. v. Great Scott Coal & Coke Co., 75 W. Va. 423, 83 S. E. 1031; Mullen v. Lake Drummond Canal & Water Co., 130 N. C. 503, 41 S. E. 1027, 1030, 61 L. R. A. 833.

The plaintiffs in the trial court brought separate suits against the levee district for damages to certain lands appropriated without their consent and damages to other land appropriated by the district for the purpose of using same as a floodway in carrying out the plan of reclamation and for value of certain cotton destroyed belonging to some of the plaintiffs. Plaintiffs alleged, in substance, that the levee district was created under the levee improvement district laws of this state; that the plan of reclamation prepared by the district was impractical and unskillfully planned; that the district undertook, through construction of levees and ditches, to divert the flood waters of Cedar, Walnut, and Turkey creeks, tributaries of the Trinity river, from their accustomed channels and divert same in a new channel across valleys and through hills into the Trinity river, and also to divert the waters of Trinity river in a similar manner from its natural channel into a different channel; that in doing so, the district stopped up the old channels of said streams and restricted their flood waters to narrower channels, holding the water at a higher level and at a reduced fall, thus causing the flood waters to overflow the lands of claimants, not theretofore overflowed, and to cause the waters to stand upon such land for a much longer period than they did before the construction of the improvements embraced within the plan of reclamation.

J. Frank Williams, who did not ask for cotton damages because his land was not in cultivation, among other things alleged that the levee district took without compensation or without his consent, for the purpose of placing thereon its levee, 4.1 acres of land and that the district never condemned same nor acquired it in any way as required by law, and in addition to taking his land for levee purposes, damaged his other land. J. B. Lin-

der alleged that the entire waters of the Turkey creek basin were brought across through the hills in an unnatural way through a ditch over his land, which was out of the district, and dumped into the Walnut and Cedar creek basins, and that this was done without his consent or permission, and in some instances dug the ditch between the improvements situated on his land and in doing this appropriated 14.2 acres of land for levee and ditch purposes. H. L. Flagg alleged that the district, without his consent or permission, and without paying him anything therefor, took approximately 10 acres of his land upon which to dig a ditch and brought great quantities of water from an unnatural source which greatly damaged his other land.

The levee district, subject to a plea in abatement, filed a general demurrer and certain special exceptions. We will notice the exceptions later. It further answered that it was created under the provisions of articles 7972 to 8042, R. S. It further alleged that commissioners of appraisement heard all claims for damages of those persons interested and by those believing themselves to be damaged and, after hearing the testimony of the witnesses, did on the 19th day of April, 1926, file their decree to the effect that plaintiffs and each of them in this cause had not and would not sustain any damage to his or their property by reason of the carrying out of the plan of reclamation. It further alleged: "Defendant now further shows to the Court that it has proceeded with its work and improvements, looking toward the reclamation of land heretofore overflowed and rendered unfit for cultivation, and that it has proceeded in strict conformity with the said plan of reclamation, and respectfully shows to the Court that it has not, is not now, and will not, by carrying out said plan, be guilty of any act or acts of negligence, faulty construction, or unskillful and unscientific trade to cause any damage of any kind or character to the lands of the plaintiff herein."

In the first place, no exceptions raising the foregoing issue were leveled at the petition filed by plaintiffs and no objections were made or exceptions reserved to the introduction of any testimony touching this point. Therefore this question is not properly before the appellate courts for decision. Collins v. Panhandle National Bank, 75 Tex. 255, 11 S. W. 1053; Hausmann v. Railway Co. (Tex. Civ. App.) 82 S. W. 1052 (Writ denied). In the second place, the rule announced in the foregoing decisions by the courts of this state pertain to proceedings under the eminent domain statutes. Title 52, article 3264 et seq., R. S. 1925. There is no pretense made that the levee district ever undertook to comply with the requirements of the eminent domain statutes. And in the third place, this issue was raised by the pleadings filed by the dis-

trict as well as by the evidence introduced in support thereof. 3 Texas Juris, § 731.

It is undisputed that whatever steps were taken by the levee district to condemn the lands belonging to plaintiffs were taken under the provisions of articles 7972 to 8042. Prior to the enactment of this statute the Legislature had invariably given these districts the right of eminent domain as prescribed by the eminent domain statutes with reference to the right of railroads to condemn property. This continued to be the policy of the Legislature until the articles under consideration were enacted. These articles provide an entirely different method of procedure with respect to ascertaining the amount of damages to property to carry out the needs and purposes of levee districts. They provide in detail the steps to be taken by levee districts to condemn and appropriate land. Article 7991 provides for the appointment of three disinterested commissioners and defines their qualifications. Article 7993, among other things, provides that "said commissioners shall proceed to view the lands within such district, and all other lands which will be affected by the plan of reclamation for such district if carried out * * * and all such lands within or without the district as may be acquired under the provision of this Act *for any purpose connected with or incident to the fully carrying out of the plan of reclamation;* they shall assess the amounts of benefits and all damages, if any," etc. The law further provides, "and the failure of said commissioners of appraisement to return damages to any tract of land within or without the district shall be deemed a finding that no damage will be done to that tract." Article 7995 also provides that "the findings of the commissioners as to benefits shall be final and conclusive" and "any person, or the board of supervisors of such levee district, may appeal from the decree of the appraisers assessing or refusing to assess damages or fixing the value of right of way; the only questions to be considered on such appeal shall be whether just compensation has been allowed for property taken or whether property damages have been allowed for property injured *or whether any damages are recoverable at all.*" It further provides that "the trial in the district court shall be de novo and proceedings shall be in accordance with the laws of this State *in suit for damages.*" The law further provides: "No appeal shall delay the prosecution of the work, but upon payment by the district supervisors to the district clerk the amount of damages awarded by the commissioners of appraisement, *and upon the district making bond to pay to the owner of any further amount that may be awarded him upon such appeal, title to such property so condemned shall thereupon vest in the district and it shall be entitled to immediate possession thereof.*" The law further provides: "No person owning or having any interest in any

land in any county in which copy of the plan of reclamation has been filed and notice published of the hearing before the commissioners of appraisement, who has failed to file claim for damages as above provided, or who has failed to file objection to the damages assessed by the commissioners against his land, or who having filed such claim or objection, has failed to appeal from an adverse ruling upon such claim or objection, shall thereafter be heard to claim any damages from the levee district or its supervisors, officers or agents by reason of the carrying out of the plan of reclamation." (Italics ours.) The law further provides that adequate compensation shall be made to the owners of any property so taken, damaged, or destroyed for such purposes (see article 7981).

It is alleged by the district that the commissioners of appraisement had a hearing and on April 19, 1926, refused to award plaintiffs anything. The decree of the commissioners of appraisement, if ever made, was not introduced in evidence and therefore is not incorporated in this record. It is undisputed that the district undertook to carry out its plan of reclamation in January and February, 1926, even before a hearing was had before the commissioners of appraisement in April, 1926. It is undisputed that the district took more than 14 acres of Linder's farm land for the purpose of constructing a ditch and placing levees thereon without his consent and without paying anything therefor; that it took 10 acres or more of Flagg's land without his consent and for which it paid him nothing or offered to pay him anything and used it for its purposes; that Williams claims that it took more than 4 acres of his land for the purpose of placing a levee thereon without his consent and that the district has never offered to pay these plaintiffs or either of them anything for the land taken or damaged in carrying out its plan of reclamation. It is also undisputed that the district had supplemental plans prepared and approved upon which no hearing was ever had as required by law; *that the district never made a bond of any kind to the plaintiffs or either of them as required by this act.*

When the language used in this act is construed in the light of the past history of the general eminent domain statutes of this state, we think it becomes plain that it was intended to get away from the old rule announced by the courts with reference to that statute, and to adopt a new procedure with respect to such matters. That the act was intended to evade the old rule and to relieve districts of uncertainty, litigation, and expense, is recognized by the district, and we quote from the brief filed by the attorneys for the levee district. In that brief the following language is used: "It will be noted that it is clearly the purpose of this

Act to fix all damages prior to the beginning of the work and there is a sound reason for this because it is necessary for the levee district to know the cost before undertaking the work, else the property values upon which taxes are to be levied might not be sufficient to pay the costs in damages and therefore the work would be impracticable. It will be further noted that the Commissioners of Appraisement go further and have greater latitude than where there is condemnation for rights of way for Railroads. In condemnation for rights of way for railroads it is limited to the land taken, and damages to the other land owned by the individual whose land is taken and does not include damages of other parties whose land may be affected by the Railroad, but none of whose land is taken; whereas, in the case of levee district the Commissioners of Appraisement fix the value of the land taken and damages to all land affected in carrying out the Plan of Reclamation. * * *"

Therefore, the rules announced in the authorities cited by the levee district are not applicable in this case.

■ Furthermore, the decisions hold that no rule is better established in this state than condemnation proceedings are purely statutory and must be strictly complied with. It is undisputed that the district dug its ditches and constructed its levees and diverted water, as above stated, without offering to pay the owners of the land so taken and damaged or to make a bond in compliance with the plain letter of the statute to compensate the owners in case of any award against the district upon appeal. The burden was upon the district to show that it had complied with the law. This was not done. Under the state of this record, the district was a naked trespasser and it was proper for the trial court to estimate the value of the land taken or damaged as of the date of the trial. Texas West. Ry. Co. v. Cave, 80 Tex. 137, 15 S. W. 786; San Antonio & A. P. Ry. Co. v. Ruby, 80 Tex. 172, 15 S. W. 1040; Beaumont & G. N. Ry. Co. v. Elliott (Tex. Civ. App.) 148 S. W. 1125, 1126; San Antonio & A. P. Ry. Co. v. Hunnicutt, 18 Tex. Civ. App. 310, 44 S. W. 535, 536; City of San Antonio v. Fike (Tex. Civ. App.) 211 S. W. 639, 641; Clower v. Fannin-Lamar-Delta Counties Levee District (Tex. Com. App.) 39 S.W.(2d) 831, 833. This section of the Commission, speaking through Judge Ryan in the case of Clower v. Levee District, supra, in discussing condemnation proceedings, said: "Proceedings to condemn property for public use are special in character, and their validity must depend upon a strict compliance by the condemning authority, with the law authorizing them. Parker v. Ry. Co., 84 Tex. 333, 19 S. W. 518; McIntire v. Lucker, 77 Tex. 259, 13 S. W. 1027; Cummings v. Kendall County, 7 Tex. Civ. App. 164, 26 S.

W. 439; 1 Lewis, Eminent Domain (3d Ed.) § 387; 2 Cooley's Const. Limitations (8th Ed.) p. 1119. But, as to compensation and remedy, they should be liberally construed in favor of the property owner. 1 Lewis, Eminent Domain (3d Ed.) § 389."

■ Several special exceptions were leveled at plaintiffs' petitions upon the ground that it was a direct attack upon the plan of reclamation of said district and not in accord with article 8034, supra. This precise contention was overruled in the case of Wilmarth v. Reagan (Tex. Com. App.) 242 S. W. 726, 730.

■ The Court of Civil Appeals correctly held that the trial court did not err in consolidating these suits. Article 7995, among other things, provides that after an appeal has been made from the decree of the commissioners of appraisement to the district court that "such appeals may be consolidated in the district court." The trial judge, in the exercise of his discretion, consolidated the suits. The suits were tried before the court without a jury and there is nothing in this record to show that any harm has been done the litigants by consolidating these suits. This holding is in line with the rule announced by the decisions that it is the public policy of this state to avoid a multiplicity of suits. Lawther Grain Co. v. Winniford (Tex. Com. App.) 249 S. W. 195; Bolton v. City of DeLeon (Tex. Civ. App.) 283 S. W. 213.

■ It is contended that the trial court erred in allowing some of the plaintiffs certain sums for crop damages. This contention was raised by special exceptions to the petition as well as by reserving bills of exception to the testimony introduced. While the statute is broad and provides for the consolidation of suits with a view of reducing the expenses incident to litigation and to avoid a multiplicity of suits, yet we are constrained to construe the statute limiting the recovery to damages to land. The items for crop damages were found separately and independently of the items of land damages found by the trial court in favor of the respective plaintiffs, and can be remitted without disturbing the other parts of the judgment. To this extent the motion for rehearing will be sustained. Plaintiffs in error offer here, as they did in the Court of Civil Appeals, that if the court hold that the items of crop damages allowed by the trial court in its judgment be improper that the parties will remit all crop damages, together with interest thereon as set out in the judgment of the trial court.

We therefore recommend: (1) That the judgment of the Court of Civil Appeals be reversed; and (2) that the judgment for crop damages allowed by the trial court as follows: To H. L. Flagg $515, to J. B. Linder $1,030, to J. W. Bartlett $1,522, to Mrs. J. L.

Evans $412, and to Mrs. Adelle Evans $600, be reversed and hereby rendered in favor of defendant in error, and that each of the parties take nothing by reason of said judgment allowing them said items for crop damages as above stated, but that the judgment of the trial court in all other respects be affirmed.

CURETON, Chief Justice.

Motion for rehearing in part granted and in part overruled, and judgment entered as recommended by the Commission in the opinion on motion for rehearing.