**WILLIAMS et al. v. HENDERSON COUNTY LEVEE IMPROVEMENT DIST. NO. 3.**

No. 1209-5521.

Commission of Appeals of Texas, Section B.

March 4, 1931.

W. R. Bishop and Sam Holland, both of Athens, and John H. Sharp, of Austin, for plaintiffs in error.

Justice & Sigler, of Athens, James Young, of Kaufman, and O. B. Freemen and Eckford & McMahon, all of Dallas, for defendant in error.

**SHORT, P. J.**

This is a consolidated suit, the original suits having been instituted in the district court of Henderson county by the plaintiffs in error, wherein damages to their land, caused by the defendant in error constructing levees and digging diversion channels for the purpose of reclaiming overflow land situated in the Trinity river bottom, other than the lands of plaintiffs in error, was sought. Some of the plaintiffs in error also sought to recover damages for land taken by defendant in error in constructing its levee improvements, and for damage to crops, which they had grown on their land and which had matured during the year 1927.

In the trial court the plaintiffs in error each recovered judgment for the damage to their lands, which were not within the levee district, and each of those seeking to recover for land taken and damage to his crops recovered judgment for such damages, the total amount of recovery being approximately $51,-000. The Court of Civil Appeals affirmed that part of the judgment for the land taken, and for the damage to the crops, but reversed that part of the judgment of the trial court awarding recovery for the damage to the lands, and remanded the cause. 19 S.W.(2d) 197.

The defendant in error, in order to reclaim from overflow some 18,000 acres of land in Trinity river bottom, has, by digging a diversion channel, diverted the water of Turkey creek with a watershed of 28½ square miles, which formerly flowed into the Trinity river basin, and caused such waters to flow into Cedar creek basin. It has also constructed levees 25 to 30 feet high across the basin of Cedar creek with a watershed of 1,080 square miles near its mouth where such basin is 10,-000 feet wide, leaving only a space of from 800 feet to 1,200 feet through which the flood waters of Cedar creek and the diverted waters of Turkey creek are compelled to flow into Trinity river. Below this levee, it changed the channels of Cedar creek, and of the Trinity river, by digging diversion channels, neither of which were as wide nor as deep as the original channels. It is also shown that the water of Walnut creek flows into Cedar creek above where these levees were constructed.

Situated adjacent and above these levees are located the lands of plaintiffs in error. These lands are in the basin of these creeks, and prior to the construction of the levees were bottom land farms, which annually produced profitable crops for the owners. At flood stage, previous to the construction of the levees and channels by defendant in error, some portions of these lands were subject to overflow, though the water at such times did not remain on the lands for a sufficient length

of time to destroy the crops growing thereon. After these levees were constructed, and in the year 1927, the crops growing on these lands were totally destroyed, for which the plaintiffs in error recovered compensation by the judgment rendered in the trial court, which part of the judgment the judgment of the Court of Civil Appeals affirmed. The opinion of the Court of Civil Appeals states rather fully the grounds upon which recovery was sought, the defenses interposed to such recovery, and those portions of the statute applicable to the various provisions and obligations of the respective parties, in consequence of which it will be necessary for us to make only a brief statement of the facts, referring to the statement in the opinion of the Court of Civil Appeals for a more complete one.

The Court of Civil Appeals refused to permit that part of the judgment of the trial court to stand in so far as it is based on permanent injuries caused to be inflicted on said lands by the changed conditions resulting from the operations of the defendant in error in erecting levees and changing the channels of the creeks and also of the river, for the alleged reason that the court is unable to find any testimony sufficient to fix a definite market value of said lands after the construction of such levees, holding that under the facts the measure of damages for permanent injuries to land is the difference in the market value thereof just prior to the time of the levee improvements and immediately subsequent thereto.

The plaintiffs in error call our attention to the fact, disclosed by the record, that the defendant in error did not present this question as an assignment of error filed in the court below, nor was it presented in the brief filed in the Court of Civil Appeals, the question being only presented as fundamental error, and claiming that this question was not an error of a fundamental nature. According to the provisions of article 1844 (Rev. St.) all errors not distinctly specified are waived. Preferring to dispose of this question, regardless of this state of the record, we will proceed to discuss those assignments of error in the application, calling in question the correctness of that portion of the opinion of the Court of Civil Appeals which deals with it.

■ There was no request of the trial judge to prepare and file his findings of fact and conclusions of law, and none were filed. Had the trial judge responded to such a request, and filed findings of fact, it would have been the privilege of the Court of Civil Appeals to have set aside those findings, if, in its opinion, there was no testimony, or an insufficient amount of testimony to support any one or more of the findings. In the absence of any findings of fact by the trial judge, if the record furnishes testimony legally sufficient to support the judgment of the trial court, upon any theory sound in law, upon which the judgment could be sustained, it was the duty of the Court of Civil Appeals to affirm the judgment of the trial court. The judgment of the trial court having been reversed, substantially for the reason that the Court of Civil Appeals says it could not find any testimony which attempts to fix a definite market value of such lands, after the construction of such levees, and assuming that the measure of damages for permanent injuries to the land is the difference in the market value just prior to the time the improvements were made and immediately subsequent thereto, it necessarily reached its conclusion that the judgment of the trial court should be reversed by reason of the fact that there was no testimony to legally sustain that part of the trial court's judgment which allowed the plaintiffs in error to recover damages for permanent injuries to the land.

■ In fact the Court of Civil Appeals recites that: "The trial court in his judgment did not state whether the damages adjudged are for permanent or temporary injuries to said lands." With the record in this condition it was the duty of the Court of Civil Appeals to sustain this part of the judgment, which was reversed, if the record furnished sufficient legal testimony to support the judgment in the trial court upon the theory that the judgment was based upon a finding of fact that the lands had been injured. The opinion of the Court of Civil Appeals clearly reflects its conclusion that the testimony was ample to have supported the findings by the trial judge that the lands of the plaintiffs in error had been injured by reason of the construction of the levees. Whether that injury should prove to be a permanent one, for ever afterwards irremediable, was not a material question before the Court of Civil Appeals, even under a proper assignment of error. For the Court of Civil Appeals to have concluded that this part of the judgment of the trial court was based upon a finding of fact, by the trial judge, that the injuries to the lands were of a perpetual nature, in the absence of such a finding, and with the presence of ample testimony that the injuries to the lands in fact existed, it was pure speculation on the part of the Court of Civil Appeals to assume that the trial judge based his judgment on a finding of fact that the injuries to the lands were perpetual.

The application for the writ of error granted in the case presents eight assignments, an inspection of which demonstrates the fact to be that all of them relate either directly or indirectly to the question we have been discussing. The sixth and seventh assignments of error, which furnish the grounds for the granting of the writ, are couched in the following language:

"The Court of Civil Appeals erred in holding that the trial court concluded that prior to the construction the market value of these lands was from $15.00 to $20.00 per acre as testified by appellant's witnesses, for the reason that other witnesses testified that these lands were of the market value of from $40.00 to $100.00 per acre, and as there is in the record no conclusions of fact and law, and nothing contained therein which would indicate that the testimony of such other witnesses were not entitled to credit, the Court of Civil Appeals was not in law warranted in speculating on what the trial court concluded in this respect.

"The Court of Civil Appeals erred in holding that the trial court concluded that 'the market value of these lands was totally destroyed, as testified to by appellees, but that such market value prior to the construction was from $15.00 to $20.00 per acre as stated by appellant's witnesses, there being no conclusions of fact and law and there being evidence from which the trial court could have concluded that the market value of said lands were not totally destroyed, and the holding here complained of being a matter of pure speculation in which the Court of Civil Appeals was not warranted in indulging."

It will be observed that the sixth assignment challenges the correctness of the holding of the Court of Civil Appeals that the trial court concluded the lands belonging to plaintiffs in error, prior to the construction, had a market value of from $15 to $20 per acre, as testified by the witnesses introduced by defendant in error, for the reason that numerous witnesses, some of whom were wholly disinterested, testified that these lands had a market value, prior to the construction, of from $40 to $100 per acre.

The seventh assignment of error challenges the correctness of the Court of Civil Appeals in holding that the trial court concluded that: "The market value of these lands was totally destroyed," and their value having been found by the trial judge to have been from $15 to $20.00 an acre, before the construction of the levees, and no testimony having been introduced as to their value after the levees had been constructed, the trial judge had no basis in fact or in law to render the judgment he did with respect to this character of damage, since the measure of damages, under the conditions assumed to exist by the Court of Civil Appeals, was the difference between the value of the land just prior to the construction of the levees and immediately thereafter.

It is apparent, under all the testimony, that the trial court could have found the value of these lands to have been more than $15 to $20 per acre. J. W. Bartlett, one of the plaintiffs in error, recovered judgment for $30 per acre as damages to his 359 acres. H. L. Flagg recovered $40 per acre for .10 of his 32-acre tract, and for the balance of the 22 acres Flagg recovered damages in the sum of $400. These facts clearly show that the trial court found a value of these lands to have been more than from $15 to $20 an acre. These facts also show conclusively that the trial court did not find that the value of these lands was totally destroyed. $500 was the amount of damages which the trial court awarded to H. L. Flagg for injuries to 22 of his 32-acre tract, and $400 was allowed him for the 10 acres, which was taken. The record discloses the same condition, with reference to the tracts of land owned by the defendant in error Linder. These facts are all recited in the judgment rendered by the trial court.

In the face of this situation, which the record discloses, the Court of Civil Appeals uses language clearly indicating that it reversed the judgment of the trial court on the ground that there was no testimony in the record tending to show the market value of the lands injured after the levees had been constructed, which testimony, of course, was essential to be produced in order that the trial judge might have a basis upon which to estimate the value of the permanent injuries to the lands in question. This language, to which we refer, is: "It appears, therefore, that the trial court concluded that the injury to the land was permanent, and that their market value was totally destroyed, as testified to by appellees, but that such market value prior to construction was from $15 to $20 per acre, as stated by appellant's witnesses, who appeared to have been disinterested." The Court of Civil Appeals having erroneously concluded that the trial judge of necessity must have based his judgment upon the theory that the injuries to the lands, of which complaint was made, were perpetual and finding, as a fact, that there was no testimony tending to fix the market value of the lands after the injuries were inflicted, it fell into the further error of misconceiving the law, applicable to the facts of this case. An inspection of the statement of facts shows that substantially all of the plaintiffs in error testified that the market value of their lands before the levees were constructed was around $75, and that they had no market value after the levees were constructed. The trial judge may have believed this testimony, and also may have believed that the injuries to the lands were permanent, and, if so, he could have based his judgment upon that situation. For instance one of the plaintiffs in error testified, among other things, that: "This cleared land I have in farms where I live was worth about $75.00 per acre before any of these improvements were put in there. With the present conditions I consider it worth nothing now, it don't pay expenses. I

have about 450 acres over here in the bottom. Mr. Williams' land (another one of the plaintiffs in error) joins mine. Mr. Williams' land is affected about like mine. If his land was of a certain value before that time then it has been affected about like mine." There was other testimony of similar nature and to the same effect given by each of the plaintiffs in error. The fact that they were interested parties did not necessarily preclude the trial judge from accepting their testimony as being true.

The Constitution of this state (art. 1, § 17) provides that: "No person's property shall be * * * damaged * * * for * * * public use without adequate compensation being made, unless by the consent of such person." The Court of Civil Appeals does not controvert the proposition that the record shows that the property of these plaintiffs in error has been damaged, but it says that there is not any testimony in the record to enable the court to determine the amount of damages. A great many witnesses testified for the plaintiffs in the trial court that by reason of the nature of the improvements made by the levee district, which are of a permanent type, and the diversion of the entire waters coming down the Turkey creek basin into the Cedar creek basin, where most of the land owned by plaintiffs is located, and the changing of the original channels of Cedar creek and Trinity river, as was done, and the congestion of the waters which would hold the waters in the Cedar creek basin on the lands of plaintiffs much longer and to a higher depth than ever before made it a permanent condition, which entirely destroyed the lands for agricultural purposes, and permanently damaged their use and value for all purposes.

It is true that some of the testimony introduced by defendant tends to show that the injury to the land will not continue to exist for all time, and be of a permanent nature. But it is undisputed that the flood waters from the entire Turkey creek watershed has been diverted by deep canals and ditches into the Cedar creek basin, thereby emptying the water into that basin near plaintiff's lands; that the original channels of Trinity river and Cedar creek have been stopped up, and new and smaller channels dug in place of the old ones; that the levees built are large and permanent, being about 100 feet or more wide at the base and are about 25 or 30 feet high; that where the water used to spread out all over the Trinity river bottom for a distance of several miles, it is now restricted within a space of about 2,500 feet; that Cedar creek basin was about 10,000 feet wide, over which the water coming down that watershed flowed, and now it is restricted within a space of 800 to 1,200 feet. It is undisputed that the location of the ditches, canals, and levees, the diversion of the water from Turkey creek to Cedar creek basin, the changing of the channels of both Trinity river and Cedar creek, and the restriction of the flood waters above stated, are permanent, and that these things had all been done and accomplished prior to the time this suit was tried.

■■ Based upon this testimony, the trial court was amply justified in rendering the judgment that was rendered in the case. The honorable Court of Civil Appeals again misconstrued the law applicable to the case. The Supreme Court of this state has definitely settled the rule that there is a difference between a permanent injury and one that is perpetual. In F. W. & N. O. Ry. Co. v. Wallace, 74 Tex. 581, 12 S. W. 227, 228, the Supreme Court of this state said: "Such an injury is one in its nature permanent, though it may not be perpetual, and differs from an injury to a growing crop, which does not result in any injury to the land as distinguished from the crop." In the case of Morton Salt Company v. Lybrand (Tex. Civ. App.) 292 S. W. 264, the court said: "Our courts have uniformly held, in cases where it is shown that, by overflow, fire, or other agency, the roots or sod of native or other perennial grasses, fruit or other trees, grape or berry vines, or the productivity of the soil are impaired or destroyed, that the injury is permanent, in nature, for which the owner is entitled to recover, as damages, the difference in the market value of the land before and after the injury. This doctrine is well illustrated in the decision of the Supreme Court in F. W. & N. O. R. Co. v. Wallace, 74 Tex. 581, 12 S. W. 227. In that case plaintiff sued for damages for injury caused by the burning of grass and turf roots. The trial court instructed the jury that, in estimating the damages, they should be governed by the difference in the value of the land immediately before and immediately after the injury. * * * The injury, as found by the jury, is in our opinion as said by Judge Stayton in F. W. & N. O. R. Co. v. Wallace, supra, 'one in its nature permanent, though it may not be perpetual.' "

Be that as it may, we think it is trifling with the lawful rights of the plaintiffs in error for an appellate court to speculate upon what theory a trial court has tried the case and rendered the judgment, where the whole record, without dispute, demonstrates the fact to be that the owners of these valuable lands, were in the undisputed enjoyment of them, except from an occasional flood which soon disappeared and left the land uninjured when these levees were constructed and these channels were dug; that after this had been done by the defendant in error, the lands of these plaintiffs in error were found to be practically useless for the purposes for which they had previously been adopted. Before these levees were constructed, flood water

208

coming down Cedar creek through this valley nearly two miles wide, passed into the main channel of Trinity river without being compelled to remain stationary on the plaintiff in error's lands so long as to materially injure them. Since these levees have been constructed the reverse is true, and these lands, by reason of the flood waters being compelled to remain on them for so long a time, have been rendered practically worthless. The trial judge having all the facts before him, possibly having personally inspected the lands, with an opportunity to hear and see the witnesses who testified in the case, has determined the facts in the case to be with the plaintiffs in error. We are not inclined to disturb the judgment of the trial judge, and, as we have seen the record does not show that he committed any reversible error in rendering the judgment he did, we think the Court of Civil Appeals erred in reversing and remanding the case to the extent it did.

We recommend that the judgment of the Court of Civil Appeals in so far as it reversed the judgment of the trial court be reversed, and that the judgment of the trial court be in all things affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.