# Miller et al. v. City of Georgetown.
# United Corporation, Inc., v. Same.

Dec. 21, 1945.

McKnight & Shuff for appellants.

Fred Lisanby for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

These two appeals have been consolidated since they present the same question for decision. That question is: Has a city of the fourth class authority to acquire property for a municipal parking lot?

The Board of Council of the City of Georgetown adopted an ordinance which contained the following preamble:

"Whereas there are no public or private parking lots for automobiles in Georgetown, and

"Whereas, all parking of automobiles is now done on the side of public streets in the city, and the parking of automobiles on said streets is presenting traffic congestions and problems that need to be eliminated and

"Whereas there is need for municipal parking facilities to relieve the city streets from much of the parking of cars thereon and to furnish parking facilities near the business section of said city, and

"Whereas, the following two tracts of land are centrally located near the business section of said city and can be used in connection with other property owned by the city for a municipal parking lot."

The ordinance then described the two tracts of land. One tract is owned by United Corporation, and fronts on the west side of Court alley a distance of 28 ft. 9 in. and runs back in a western direction between parallel lines a distance of 110 ft., and is bounded on the north by a lot owned by the City of Georgetown. The other tract is owned by John Miller and adjoins the United Corporation lot on the south. The ordinance provided that upon its passage the proper city authorities might, if compensation for the property could not. be agreed upon, proceed to condemn it as provided by law. The city authorities were unable to purchase the lots, and on August 3, 1944, condemnation proceedings were instituted in the Scott county court against each of the owners. The petition in each case alleged that the strip of land sought to be acquired was to be used in conjunction with an adjoining lot already owned by the city for a municipal or off-street parking lot for automobiles; that there were no public or private parking lots within the city, and it was necessary to acquire one for that purpose. An answer was filed in each case in which it was alleged that

a municipality is without authority to acquire or maintain a parking lot, and that the acquisition or maintenance of a parking lot is not the acquisition or holding of the real estate for municipal purposes. The county court overruled the city's demurrer to the answer and sustained the defendant's demurrer to the petition. The city appealed to the circuit court which reversed the ruling of the county court and sustained the city's demurrer to the answer and overruled the defendant's demurrer to the petition. The defendant in each case has appealed.

The rule in this state is that a municipality possesses only such powers as the Legislature has expressly or impliedly conferred upon it. Commonwealth, Etc. v. Day, 287 Ky. 176, 152 S. W. 2d 597; George v. City of Raceland, 279 Ky. 316, 130 S. W. 2d 825. As expressed in Herd v. City of Middlesboro, 266 Ky. 488, 99 S. W. 2d 458, 459: "A municipal corporation has only such powers as are expressly granted to it by its charter, or which are necessarily implied or incident to those so granted, or which are indispensable to the declared objects and purposes of the corporation."

Further along in the opinion it was said: "But when a particular power has been delegated to a municipal corporation by the Legislature without any express limitations, the extent to which it shall be exercised rests in the discretion of the municipal authorities, and the courts cannot interfere so long as it is exercised in good faith and for municipal purposes. One of the powers indispensable to the purposes of a municipal corporation is the power to provide for the protection of the health, safety, and welfare of its inhabitants."

KRS 86.110 sets forth the general powers of the board of council of a city of the fourth class. It provides that the city council may purchase, upon a vote of two-thirds of the members of the council, any real estate that it considers necessary for city purposes, and may sell and dispose of any city property upon a similar vote. Subsection 8 provides that the city council may "declare by ordinance that property is needed for municipal purposes and and for the purposes mentioned in subsections (6) and (7) of this section, upon the passage of which ordinance the proper city authorities may, if the compensation for the property cannot be agreed upon, pro-

ceed to condemn the property in the manner provided by KRS 416.010 to 416.080." KRS 86.120 authorizes the city council to license, tax, and regulate vehicles. Subsection 8 of KRS 86.110 does not specifically mention parking lots, but is in general terms and authorizes the city to purchase or condemn real estate which it has declared by ordinance is needed for municipal purposes. In Louisville & N. R. Company v. City of Louisville, 131 Ky. 108, 114 S. W. 743, 745, 24 L. R. A., N. S., 1213, it was said: "Although the power of eminent domain is not inherent in municipalities and may not be exercised by them without statutory authority, it is not necessary that the statute should specifically mention streets, alleys, highways, or other purposes for which the municipality may condemn property. The general power of condemnation for appropriate municipal purposes confers the authority to condemn for every necessary municipal purpose."

Is then the acquisition and use of land by the city for a parking lot a municipal purpose? As said by the court in Nourse v. City of Russellville, 257 Ky. 525, 78 S. W. 2d 761, 764, when speaking of the powers of a municipality: "The prime function of these units of government is to promote the safety, convenience, comfort, and the common welfare of their citizens by establishing and maintaining those things which tend to do so and by regulating or prohibiting those things which are hurtful."

It is a matter of common knowledge that the great increase in recent years of motor vehicles has created a situation, even in the smaller cities, which is fraught with danger to persons using the streets and causes inconvenience to the residents of the city. Under the power to regulate the use of vehicles on their streets, cities may, and frequently do, prohibit parking on the streets in congested areas, and we think the right to furnish parking space is a necessary adjunct to the right to regulate traffic, otherwise it would be impossible to achieve the general objectives of the statutory grant of power to regulate the use of streets by vehicles. One of the main objectives is the protection and safety of the citizens. In Commonwealth v. Nolan, 189 Ky. 34, 224 S. W. 506, 508, 11 A. L. R. 202, Harlan, a city of the fourth class, adopted an ordinance making one of its

streets a one-way street for travel by motor vehicles. In upholding the ordinance this court, after referring to section 3562 of the Kentucky Statutes, Supp., now part of KRS 94.360, said:

"Certainly the power thus given by the statute, supra, in the absence of express or implied restrictions imposed by some other statute, which is not claimed, can leave no doubt of the right of the city council to pass the ordinance, and such an ordinance is a valid exercise of the police power for the protection and safety of its citizens. * * *

"The right of the state or municipality to regulate the operation of motor vehicles may be said to be universally recognized, and that this must be done by putting them in a class in which other vehicles are not included, arises out of the new elements of danger peculiar to their structure, mechanism, and use."

Courts have frequently held that a grant of power to a municipality includes the power to do those things necessary to accomplish the main objective or which are incident thereto. In City of Tulsa v. Williams, 100 Okl. 116, 227 P. 876, the court held that the grant of power to acquire land for reservoir purposes included the right to acquire adjacent land for the control of flowage. In Independent School District v. Hewitt, 105 Iowa, 663, 75 N. W. 497, it was held that a grant of power to acquire land for schoolhouse purposes was broad enough to include adjacent land to be used for playgrounds. In City of Grand Rapids v. Barth, 248 Mich. 13, 226 N. W. 690, 64 A. L. R. 1507, the court held that land might be taken adjacent to a street for parking purposes. The city condemned a strip of land 16 ft. wide adjacent to one of the main thoroughfares leading to the business section and the street was widened to that extent, but the purpose of the condemnation proceedings was to procure space for parking automobiles. The question posed for decision was whether the city could condemn private property for the "sole purpose of creating parking space thereon." The court said:

"The demand of our motor age has greatly increased the necessity for space in the public streets for leaving vehicles. This right is of importance to the tradesmen along the street, as well as to the traveler

thereon. One would hardly have the temerity to question that such a use is a lawful use of the highway. Its regulation is a matter for the exercise of police power, with which, in the absence of abuse, courts should not interfere. In the future this space, which the city seeks to add to Fulton street, may or may not be used for parking. The land was taken 'for street purposes.' But parking is a proper use of the highway, and, if necessity therefor exists, the right of eminent domain may be exercised to establish or widen highways adequate for this purpose. The taking of the land for highways is not limited to that necessary for actual travel.''

The General Assembly in 1942 passed an act entitled ''An Act authorizing cities of the first class to provide for off-street parking facilities and for the operation and regulation of such facilities; to acquire and hold property for such purpose by purchase, condemnation, or otherwise; to issue revenue bonds on any such property; to establish and fix the fees for the use of such parking facilities; and provide for the disposition of revenues.'' Acts 1942, c. 15. The act was amended in 1944, and its provisions were extended to cities of the second class. Chapter 129, Acts 1944, KRS 93.352 to 93.356, inclusive; and KRS 94.750. The General Assembly at its 1942 session also passed an act authorizing cities of the second class to acquire, erect, maintain and operate a system of parking meters or other similar mechanical devices to regulate and limit vehicular parking on the streets. Chapter 23, Acts 1942, KRS 94.740. Appellants argue that these acts indicate that it was the intention of the Legislature to withhold from cities of other classes the authority to acquire and hold real estate for the purpose of furnishing off-street parking facilities or to acquire and operate a system of parking meters. An inspection of the acts shows that they provide a broad and comprehensive plan for acquiring, operating and financing parking lots and systems of parking meters. The Legislature may have had some doubt as to the authority of cities in these respects or it may have desired to broaden the authority conferred upon them to acquire property for municipal purposes. The City of Louisville adopted an ordinance providing for the establishment of parking meters when there was no statute expressly authorizing a city of the first class to acquire, maintain and operate a system of parking meters. The

validity of the ordinance was assailed, and in City of Louisville v. Louisville Automobile Club, 290 Ky. 241, 160 S. W. 2d 663, it was held that the city, under the police power vested in it, had authority to install parking meters, and the ordinance was declared to be valid. The decision was rendered March 27, 1942, just a few weeks after the adoption of Chapter 23 of the Acts of 1942 and before it became effective.

It might be debatable whether the acquisition of a parking lot or a system of parking meters by a city could, in strictness, be denominated a purchase for a municipal purpose, and, no doubt, it was to relieve from any necessity of construction that parking lots and parking meters were expressly enumerated in the statutes referred to by appellants. It was thus not designed to limit the meaning of the phrase "municipal purpose," but rather to broaden its scope to include any of those matters which might otherwise be considered doubtful. We have no doubt that furnishing a parking lot for automobiles constitutes a legitimate municipal purpose.

The judgment in each case is affirmed.