**J. M. AMSTATER et al., Appellants,**

**v.**

**Vincent ANDREAS and Henry Hicks, Appellees.**

**No. 5049.**

Court of Civil Appeals of Texas.

El Paso.

Oct. 27, 1954.

Rehearing Denied Nov. 17, 1954.

Potash, Cameron, Potash & Bernat, Travis White, City Atty., H. E. Brockmoller, Asst. City Atty., El Paso, for appellants.

Cunningham & Malone, El Paso, for appellees.

McGILL, Justice.

This is a suit to determine the validity of a proposed bond issue of the City of El Paso. The purpose of the proposed bonds is to provide off-street parking facilities in the downtown business district of the city. By ordinance the city created Improvement District No. 3 and the bonds were approved by a vote of a majority of the taxpaying residents of that district who pay taxes on property situated in the district. The proposed bonds are to be paid from taxes on property in the district only.

The suit was filed by appellants and other taxpayers who favor issuance of the bonds against the city of El Paso, its Mayor and Aldermen. The relief sought was a judgment declaring the bonds valid and legal obligations against the real and personal property in the created Improvement District No. 3. In order to avoid any question of collusion the defendants impleaded Henry Hicks and Vincent Andreas, two taxpayers who own property in the district who are in the business of parking motor vehicles for hire, and who are violently opposed to the issuance of the bonds. Trial was to the court without a jury. The court held the bonds invalid, stating in the judgment that the court was of the opinion that there was no express authority or implied authority *to* the city of El Paso to issue the off-street parking bonds, and that it was the judgment of the court that the bonds were invalid as being issued in excess of the authority invested in the city of El Paso to issue bonds. The principal contention raised by this appeal is that the court erred in holding that the city lacked authority to issue the bonds.

The law in this state seems to be well settled that a home rule municipal corporation such as the City of El Paso may exercise such powers and only such powers as are expressly granted to it in its charter or such implied powers as are incident to the powers granted, or those essential and necessary to make effective the objects and purposes of the corporation. Davis v. City of Taylor, 123 Tex. 39, 67 S.W.2d 1033; Anderson v. City of San Antonio, 123 Tex. 163, 67 S.W.2d 1036.

[2] As conferring authority to issue the bonds in question appellants rely on Sections 69 and 122 of the city charter, and Art. 1175 of the Revised Civil Statutes. This Article of the Revised Civil Statutes provides that home rule cities shall have full powers of local self government, and enumerates certain specific powers, among others

"Sec. 13. To buy, own, construct * * * and to maintain and operate a system or systems, of gas, or electric lighting plant, telephone, street railways, sewerage plants, fertilizing plants, abattoir, municipal railway terminals, docks, wharfs, ferries, ferry landings, loading and unloading devices and shipping facilities, *or any other*

*service or public utility."* (Emphasis ours.)

also

"Sec. 16. To have exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards, and public grounds of such city."

We think this statute has no application. It in no way relates to the issuance of bonds, but deals with the general powers of local self-government by home rule cities. This statute in its entirety was incorporated in the charter of the city of El Paso by amendment passed February 21, 1929. However, the amendment was of Section 70 of the charter, which relates to the general powers of local government, and in no way refers to the issuance of bonds. Therefore we think the amendment has no application to the question here presented.

The question before us is not whether the city has power to purchase and maintain off-street parking lots, but whether it has power to issue the bonds in question for this purpose. No statutory authority other than Art. 1175 has been cited, and we have found none authorizing home rule cities to issue bonds for off-street parking. We are therefore driven to the charter in search of such authority. Appellants earnestly insist that Sections 69 and 122 of the charter confer such authority on the city. These sections are here reproduced:

"Section 69: The City Council of the City of El Paso shall have power to borrow money on the credit of any improvement district of the city and issue bonds therefor for permanent public improvements in such district, and to this end the Council may divide the City or any portion thereof, into improvement districts, clearly defining the limits of each district; but every proposition to borrow money on the credit of any improvement district for permanent improvements therein shall be submitted to the qualified tax-paying voters living and owning property in such district, and shall distinctly speci-

fy the purposes for which the loan is desired and the public improvements to be constructed, but several improvements of different and distinct character and nature may be submitted in one proposition. If said proposition be sustained by a majority of the votes cast in such election in such district, such loan shall be lawful. All bonds shall specify for what purpose they were issued, shall bear interest at a rate not greater than 5 per cent per annum, and when sold, shall net not less than par value, with accrued interest to date of payment of the proceeds into the city treasury, and such bonds may be negotiated in lots, as the City Council may direct. No debts shall be contracted for the payment whereof such bonds are issued until such bonds shall have been disposed of, and no debts shall ever be created against any such improvement district unless at the same time provision be made to assess and collect annually upon the property in such improvement district a sum sufficient to pay the interest on such bonds and create a sinking fund of at least 2 per cent thereon. The interest and sinking fund tax which shall be collected annually from the property in such improvement district for such bonds shall be in addition to the other current taxes levied by the city, and shall be kept separate by the city treasurer from other funds, and shall not be diverted or used for any other purpose than to pay interest and principal on such bonds and the city treasurer shall honor no draft on said fund except to pay the interest and redeem the bonds for which it was provided. The sinking fund for such bonds shall be invested in United States interest-bearing bonds, or bonds of the State of Texas, or of El Paso County, Texas, or in bonds of the City of El Paso, and the interest of such bonds shall be reinvested and such bonds shall be sold when necessary to pay interest or principal of the bonds issued under the provisions of this section. The tax levied for interest and sinking fund for bonds

issued for permanent public improvements in any district shall not exceed 50 cents on the $100.00 valuation annually, in addition to the $2 on the $100 valuation permitted to be levied by Section 134 of this charter."

"Section 122. For the purpose of permanently improving the streets, erecting public buildings, constructing or acquiring canals for supplying the city with water, providing water works, and other permanent improvements, the City Council shall have power to borrow money upon the credit of the city, and to issue coupon bonds of the city therefor in such sum or sums as it may deem expedient, to bear interest, not exceeding five per cent per annum, payable semiannually at such place as may be fixed by city ordinance; provided, that the aggregate amount of bonds issued by the City Council and outstanding and unredeemed shall at no time exceed ten per cent of the value of the property within the city subject to ad valorem tax, according to the last assessment rolls; provided, that in estimating the total bonded debt of the city, the bonded debt of any improvement district shall not be counted."

The first question that presents itself is whether off-street parking lots constitute permanent public improvements for which the city is expressly authorized to issue bonds by the charter sections quoted. In Parr v. Ladd, 323 Mich. 592, 36 N.W.2d 157, 159, 8 A.L.R.2d 357, a statute was amended so as to provide that the term "public improvements" should include automobile parking facilities, Pub.Acts 1933, No. 94, § 10, as amended by Pub.Acts 1946, 1 St.Ex.Sess., No. 23. However, the constitutional provision under which this statute was enacted was Article 8, Section 23:

" 'Any city or village may acquire, own, establish and maintain, either within or without its corporate limits, parks, boulevards, cemeteries, hospitals, almshouses and *all works which involve the public health or safety.*' " (Emphasis ours.)

The court said:

"It matters not whether such parking facilities be considered a public utility within the meaning of article 8, § 23, or an internal improvement under article 10, § 14, of the Constitution."

In City of Whittier v. Dixon, 24 Cal.2d 664, 151 P.2d 5, 7, 153 A.L.R. 956 the contention was made that public parking places are not public improvements. In disposing of this contention the court said:

"Respondent contends that public parking places are not public improvements. The Legislature, however, has expressly authorized the acquisition of parking places to serve the public, and the legislation is valid so long as it serves some public purpose. In re Smith, 143 Cal. 368, 77 P. 180; County of Los Angeles v. Dodge, 51 Cal.App. 492, 197 P. 403; Egan v. San Francisco, 165 Cal. 576, 133 P. 294, Ann.Cas. 1915A, 754; Larsen v. San Francisco, 182 Cal. 1, 186 P. 757; Irish v. Hahn, 208 Cal. 339, 281 P. 385, 66 A.L.R. 1382. Just as public streets can be used for the parking of motor vehicles, property can be acquired for the same use. Moreover, public parking places relieve congestion and reduce traffic hazards and therefore serve a public purpose. They may be compared to municipal airports, which have been recognized as public improvements. Krenwinkle v. City of Los Angeles, 4 Cal.2d 611, 51 P.2d 1098; see 62 A.L.R. 777; 69 A.L.R. 325; 135 A.L.R. 755."

The annotation to this case has this to say:

"Although an extended search failed to disclose any other case in point, the correctness of the decision reached by the court can hardly be doubted. The advantages for merchants of having parking places open to the general public available in the neighborhood of their establishments are so generally recognized that they need no further elaboration. The lack of authority on the question is probably due to the fact that parking places are usually oper-

ated by private persons, but there seems to be no inherent reason why they should not be provided by the municipality and under proper circumstances, paid for by special assessments."

It seems to us that there can be little doubt that off-street parking facilities do constitute permanent (see Williams v. Henderson, etc., Tex.Com.App., 36 S.W.2d 204) public improvements within the purview of Sections 69 and 122 of the charter. Appellees' contention that there can be no improvement without something to improve is so fantastic as hardly to require discussion. Under appellees' theory, a city hall, public library or court house could not constitute a permanent public improvement unless the city owned the land on which such buildings were constructed before they were built and that they could not purchase buildings for such purposes. As pointed out in 42 C.J.S., Improvement, p. 416, the meaning of the words must be ascertained from the context and subject matter of the instrument on which they are used. See also City of Beaumont v. Priddie, Tex.Civ.App., 65 S.W.2d 434, reversed on other grounds Texas & N. O. R. Co. v. Priddie, Tex. Com.App., 95 S.W.2d 1290. To attribute the meaning urged by appellees to the words "permanent public improvements" as used in the charter would obviously lead to an absurdity. That off-street parking lots will improve the congested traffic conditions of the public streets of the city of El Paso—a condition which is amply shown by the record in this case—there can be no doubt. The fact that the Legislatures of many other states have authorized cities to provide for off-street parking indicates that such parking facilities serve a public purpose or use and that the problem of congestion of traffic is not confined to El Paso, but is almost of national importance. Of course, under Sections 69 and 122 of the charter permanent public improvements may only be acquired for a public use. The Supreme Court of this State has defined what is a public use in this language:

" 'Public use' is one which concerns the whole community in which it exists, as contradistinguished from a particular individual or number of individuals.

Gilmer v. Lime Point, 18 Cal. [229] 251." Keller v. Corpus Christi, 50 Tex. 614, loc. cit. 629.

Off-street parking lots which are available to anyone who desires to use them and who can pay the fee which the city demands, we think are clearly for public use, especially so when the purpose of such lots is to relieve congestion of traffic on the streets. The overwhelming weight of authority supports this view.

See Annotation, 8 A.L.R. 375, also the following authorities cited by appellants: De Lorenzo v. City of Hackensack, 9 N.J. 379, 88 A.2d 511, 514:

"The maintenance of off-street parking facilities * * * constitutes a proper public purpose."

In State ex rel. Gordon v. Rhodes, 156 Ohio St. 81, 100 N.E.2d 225, at page 233:

"The congestion in downtown areas of large cities and the difficulty of operating vehicles through the streets are matters of such common knowledge as to come within the scope of judicial notice. * * * It is our conclusion that conditions in a city may be such as to necessitate the furnishing of off-street parking facilities by the municipality and that the furnishing of the same, under such circumstances, would constitute the performance of a public municipal function."

Bowman v. Kansas City, 361 Mo. 14, 233 S.W.2d 26, 35:

"We hold that the purposes proposed to be carried into effect by the ordinance in question [off-street parking] are public purposes. Similar views have been expressed by the courts of other states." [Citing Va., Ky., Calif., Pa., Mich.]

Gate City Garages v. City of Jacksonville, Fla., 66 So.2d 653, 657:

"Florida is not alone in recognizing and holding that on-street parking meters and off-street parking lots may be combined into one system or plan and

that the primary purpose to be accomplished is a municipal and public purpose."

Poole v. City of Kankakee, 406 Ill. 521, 94 N.E.2d 416, 419:

"It is conceded that before the right of eminent domain may be exercised the law requires that the use for which land is taken shall be a public as distinguished from a private use. * * * 'A public use means public usefulness, utility, advantage, or benefit. It is not essential that the entire community or people of the state, or any political subdivision thereof, should be benefited or share in the use or enjoyment thereof. The use may be local or limited. It may be confined to a particular district, and still be public.' * * *

"It can no longer be doubted that the regulation of streets and traffic is in the interest of public health, safety, welfare, convenience and necessity, and thus for a public purpose."

Barnes v. City of New Haven, 140 Conn. 8, 98 A.2d 523, 528:

"The very substantial weight of authority supports the conclusion that the use in question is a public use", citing cases from N. J., Cal., Ill., Ky., Mich., N. Y., Pa.

Greenwood v. City of Washington, 230 Ind. 375, 102 N.E.2d 642, 644:

Case for violation of parking ordinance.

Only statute.

" 'To prevent immoderate and careless riding or driving. To regulate the use of streets and alleys by vehicles, and to designate the kind of conveyance and vehicles that may not be used on certain named streets that have been improved, and designate hours for the use of such streets by certain specific classes of vehicles.'

* * * * * *

"The regulation of the parking of vehicles has become a necessary incident to the control of modern day traffic. It is incidental to the express power granted to cities in Indiana to regulate traffic on the streets and alleys and may be so exercised even in the absence of the express authority granted by the Acts of 1949."

City of Whittier v. Dixon, 24 Cal.2d 664, 151 P.2d 5, 7, 153 A.L.R. 956:

"Respondent contends that public parking places are not public improvements. * * *

"Moreover, public parking places relieve congestion and reduce traffic hazards and therefore serve a public purpose. They may be compared to municipal airports, which have been recognized as public improvements."

City of Richmond v. Dervishian, 190 Va. 398, 57 S.E.2d 120, 124:

"Moreover, in congested areas of a city the proper regulation of traffic in the interest of safety of the public may require that vehicles be parked in off-street locations set aside for the purpose rather than in the streets themselves. The acquisition by the city of the necessary property to provide such parking areas is a proper incident to its right and duty to regulate the use of its streets, and the use of the property for such purposes is a public one.

* * * * * *

" 'Moreover, public parking places relieve congestion and reduce traffic hazards and therefore serve a public purpose.' "

Miller v. Georgetown, 301 Ky. 241, 191 S.W.2d 403, 406:

No express authority to issue bonds for off-street parking. Land to be used for off-street parking.

K.R.S. Sec. 86.120 authorizes the City Council to license, tax and regulate vehicles, but does not specifically mention parking lots, but it authorizes cities to purchase or condemn land for public purposes. The ordinance referred to was to condemn land

for off-street parking; quoting from another Kentucky case the court said:

" 'Certainly the power thus given by the statute, supra, in the absence of express or implied restrictions imposed by some other statute, which is not claimed, can leave no doubt of the right of the city council to pass the ordinance, and such an ordinance is a valid exercise of the police power for the protection and safety of its citizens. * * *

" 'The right of the state or municipality to regulate the operation of motor vehicles may be said to be universally recognized, and that this must be done by putting them in a class in which other vehicles are not included, arises. out of the new elements of danger peculiar to their structure, mechanism, and use.'

" * * * We have no doubt that furnishing a parking lot for automobiles constitutes a legitimate municipal purpose."

The proposition so vigorously urged by the third party appellees to effect that the bonds are invalid because the off-street parking lots for which they are to be used will compete with private business is fully answered by the following language of the Supreme Court in Town of Ascarate v. Villalobos, 148 Tex. 254, 223 S.W.2d 945, loc. cit. 950:

" 'Since the very foundation of the police power is the control of private interests for the public welfare, a statute or ordinance is not rendered unconstitutional by the mere fact that private rights of person or property are subjected to restraint or that loss will result to individuals from its enforcement.' "

In this connection it must be borne in mind that the proposed parking lots are to be purchased by the city, not by the district. The district is nothing but a defined area in which property therein situated is to be taxed to pay the bonds. It is not a legal entity. By the creation of such a district

the city did not abrogate any of its police powers which it has as an arm of the State. It is therefore our opinion that the court erred in holding that the city of El Paso had no authority, express or implied, to issue the bonds in question, and that such bonds were invalid for this reason.

Appellees have presented six counterpoints numbered from 3 to 8, inclusive, on which they rely for an affirmance of the judgment. It is apparent from the judgment that it is not based on any of these points. Apparently the trial court did not even consider them, since it was unnecessary that he do so in view of his holding that the city did not have the authority to issue the bonds. The plaintiffs (appellants) have not briefed these points, taking the position that the only question decided by the trial court was that the city lacked the authority to issue the bonds, and that is the only question on this appeal. The briefs of the third parties defendants and of the city of El Paso on these points are inadequate to properly present the many questions involved. However, it is elementary that if there is any legal ground on which the judgment of the trial court should be affirmed we are not authorized to reverse it, therefore we feel it necessary to consider these points.

Point No. 3 is that only taxpaying residents living in the newly created district were permitted to vote, and people owning property in the district but not residing therein were not permitted to vote, in violation of Article 6, Section 3a of the State Constitution, Vernon's Ann.St., and Section 5:02 of the Election Code, V.A.T.S. The words "qualified electors" appearing in Art. 6, Sec. 3a of the Constitution obviously refer to qualified electors in the newly created district where the bonds were to be voted upon, and who would have the burden of taxation to pay them. Residence is one of the qualifications required for voting in this state, and in the county where the elector offers to vote. Art. 5:02, Election Code. Article 6, Sec. 3a of the Constitution does not prohibit this requirement for electors in the district. Rather, we think

the words "qualified electors" in Art. 6, Sec. 3a of the Constitution, when considered in connection with Art. 5:02 of the Election Code, indicate that electors to be qualified must reside in the district.

■ Point No. 4 is that the bonds should have been submitted to the attorney general, and until such had been done this suit was prematurely filed. The bonds were submitted to the attorney general by the city, but he refused to pass on them, being of the opinion that he was not authorized or required to do so under the law as it then existed. Thereafter this suit was filed. During its pendency the Legislature amended Art. 702 of Vernon's Ann.Civ.St., Acts 53rd Leg., p. 369, Chap. 95, Sec. 1, so as to provide that when a city shall order an election for the issuance of bonds of the city or defined district thereof, whether required by law to be submitted to the attorney general for approval or not, such bonds may be submitted by the governing body to the attorney general for his approval in the manner provided for the approval of bonds issued by counties, cities and towns. It is clear from the statute as amended that it is entirely optional with the city whether it will submit the bonds to the attorney general or not. The city decided not to do so, which it unquestionably had the right to do; therefore the amendment has no bearing on the filing of this suit.

■ Point No. 5 is that Section 69 of the Charter is unconstitutional because it makes no provision for any hearing, and the city council did not adopt a preliminary bond ordinance required by the charter to be adopted prior to the holding of a bond election, and did not observe the requirement of Subsection 6 of Section 3a in respect to giving notice of the election. The constitutional objection is fully met by the language of the Supreme Court of the United States in Browning v. Hooper, 269 U.S. 396, 46 S.Ct. 141, 143, 70 L.Ed. page 330, loc. cit. 335:

"Where a local improvement territory is selected, and the burden is spread by the Legislature, or by a municipality to which the state has granted full legislative powers over the subject, the owners of property in the district have no constitutional right to be heard on the question of benefits. Valley Farms Co. v. Westchester, supra [261 U.S. 155, 43 S.Ct. 261, 67 L.Ed. 585]; Hancock v. Muskogee, 250 U.S. 454, 459, 39 S.Ct. 528, 63 L.Ed. 1081 [1084]; Withnell v. [Rueck-ing] Constr. Co., 249 U.S. 63, 69, 39 S.Ct. 200, 63 L.Ed. 479 [483]; Wight v. Police Jury of Parish of Avoyelles, 5 Cir., 264 F. 705." See also 63 C.J.S., Municipal Corporations, § 1366, p. 1119.

The second objection contained in Point No. 5 is not briefed and will not be considered.

■ Point No. 6 is that the transcript shows on its face that there were many conflicts in the bond election and that it did not specify the purpose for which the bonds were desired and the public improvement to be constructed. The first part of this objection is too indefinite to warrant consideration. The objection that the transcript does not specify the purpose for which the bonds were desired and the public improvement to be constructed is not well taken. The election order states that the bonds are "for the purpose of providing, building and maintaining off-street parking places for automobiles within the improvement district." It specifies the amount of bonds as two million dollars; that the rate of interest shall not exceed four per centum per annum; whether the city shall be authorized to levy a tax sufficient to pay interest on said bonds and create a sinking fund to redeem them at maturity; and that the bonds will be payable serially within thirty years. This is a sufficient compliance with Art. 703, V.A.C.S. The fact that the notice of the hearing to determine whether an election should be ordered states that the bonds would be payable serially within twenty years from their date, is of no importance. Certainly the City Council had power to decide at this hearing or as a result thereof that the bonds should be payable serially within thirty years instead of twenty years. Third party appel-

lees have cited no authority requiring the detailed information required by Art. 703, V.A.C.S., to be printed on the ballot, and we have found none. We hold that the giving of such information in the election order was sufficient. Our holdings on the other propositions urged under this point are as follows:

We hold that the purpose for which the bonds were to be issued as stated in the ordinance creating a district, i. e., for "permanent public improvement in such district", was not changed by the election order which states that the bonds are to be issued "for the purpose of providing, building *and maintaining* off-street parking places for automobiles". (Emphasis ours.) As we have held off-street parking places are public improvements the issuance of bonds for such improvements by implication necessarily includes the maintenance thereof. Therefore the procedure followed was pursuant to Section 69 of the city charter and not contrary to the purpose of the ordinance creating the district, as contended by appellees. The authority on which they rely—City of Beaumont v. Priddie, Tex.Civ.App., 65 S.W.2d 434, reversed on other grounds Texas & N. O. R. Co. v. Priddie, Tex.Com.App., 95 S.W.2d 1290—is readily distinguishable. Also, from what we have said it is apparent that appellees' contention that the off-street parking lots were necessary for the welfare of the city and its citizens—in other words, for public use is correct, but it does not follow that the entire city should have been permitted to vote. It would be as logical to assert that because a road district may and in most instances does benefit the traveling public, all citizens of the State should be permitted to vote. If the city had no authority to repeal Sections 10 and 12 of the ordinance authorizing the issuance of the bonds after the matter had been voted upon, these sections providing that the bonds should be submitted to the attorney general, and if the attempt to do so was ineffective as contended by appellees, then the bonds may yet be submitted to the attorney general. The city's attempt to repeal these sections would not invalidate them.

Point 7 is that neither the city nor the improvement district is authorized to condemn private property for off-street parking. No question of the right of eminent domain has yet arisen in this case. Such question is not before us. It may never arise. We therefore decline to pass on this point. Clark v. Greer, Tex.Civ.App., 232 S.W.2d 876.

Point 8 is that the plaintiffs are not proper parties to bring this suit. This point is immaterial. The city is asking for a declaratory judgment on the validity of the bonds. Third party appellees are taxpayers, parties to the suit opposing the issuance of the bonds. The question of the validity of the bonds was properly before the court. All of appellees' points are overruled.

It is ordered that the judgment of the trial court be and is hereby reversed and judgment here rendered granting the relief prayed for by plaintiffs in their original petition. i. e., that the bonds in question are valid and legal obligations against the real and personal property situated in Improvement District No. 3; that the levy of taxes to provide for payment of said bonds together with interest thereon is a valid and legal charge against the real and personal property in said improvement district No. 3 as provided in said proceedings, and that defendants be and they hereby are directed to issue and sell said bonds and use the money obtained therefor for off-street parking as provided for in said proceedings.

Reversed and rendered.

On Appellees' Motion for Rehearing, and City's and Amstater's Motion to Reform Judgment.

Most careful consideration has been given to Appellees' Motion for Rehearing. Lest there be any doubt as to our holding we specifically hold that off-street parking lots are permanent public improvements for which the City of El Paso is authorized to issue bonds under the provisions of its charter, quoted in our original opinion.

We did not intend to hold and did not hold that the city might issue bonds for permanent public improvements other than such improvements which serve a proper municipal purpose. The numerous authorities cited in our opinion are all grounded on the proposition that such parking lots do comprehend a municipal purpose, and they are incidental to the municipality's power to regulate traffic on its streets.

The motion for rehearing is overruled.

The motion to reform the judgment so as to "authorize" the defendants to issue and sell the bonds rather than "direct" them to do so is granted.