**W. W. WEST, Appellant,**

v.

**Minnie CARPENTER et vir, Appellees.**

**No. 7230.**

Court of Civil Appeals of Texas.

Amarillo.

Feb. 25, 1963.

Rehearing Denied April 1, 1963.

Stovall & Stovall, Floydada, for appellant.

Campbell, Brock, Wright & Waters, Lubbock, Eugene D. Wilson, Dallas, John B. Stapleton, Floydada, for appellees.

DENTON, Chief Justice.

Appellee, Minnie Carpenter, joined by her husband, H. W. Carpenter, brought this suit against appellant, W. W. West, alleging a breach of an oil and gas lease contract. The oil and gas lease with appellees as lessor and appellant as lessee was executed on December 3, 1956. By this suit appellees sought a cancellation of the lease in addition to damages to their land as a result of salt water going onto the land from the test well being drilled by appellant. Based on a jury verdict, the trial court entered judgment for appellees in the amount of $5,848.68, but denied appellees' request to cancel the lease. After both parties' motions for a new trial were overruled, each excepted and appel-

lant duly perfected this appeal. By cross-assignments appellees complained of the trial court failing to cancel the lease.

■■■ In response to special issue number one, the jury found the appellant failed to use extraordinary care and precaution in the drilling of the test well. Appellant contends the jury's finding is against the great weight and preponderance of the evidence. The oil and gas lease contained the following provision:

"Since said land is irrigated farm land, Lessee shall use extra ordinary care and precaution in all operations conducted on said land and shall not cause nor allow to exist any permanent or irreparable damage and shall conduct all operations so as to occupy only such surface area as is reasonably necessary. Lessee shall remove all slush, mud and BS from the land, fill and level all pits, mounds and excavations and otherwise restore the land so that it shall be suitable for the continuation of farming operations."

Appellees' cause of action and the special issue referred to above is based on the alleged failure of the appellant to use extra ordinary care in the operation. Whether or not the evidence supports the jury finding is determined by reviewing all the evidence. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660. In reviewing the record, we may not substitute our judgment for that of the jury. Their findings must be so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong. Continental Bus System, Inc. v. Biggers, (Civ.App.), 322 S.W.2d 1, (Refused, NRE). Durk v. American Automobile Insurance Company, (Civ.App.), 353 S.W.2d 53.

■■■ In compliance with the terms of the lease, appellant's drilling contractor began drilling operations on or about December 20, 1956. Drilling operations were shut down on December 24 and were resumed on the 26th. In taking the drilling pipe out of the hole on December 24, the well began to "kick", that is, drilling fluid and mud began coming out of the hole under pressure. When operations were resumed on December 26, the well blew salt water, air and mud through the surface and mud lines under high pressure. This "blowing" continued until January 1, 1957, at which time the well was shut down by the master valve. It is undisputed there was pressure building up in the well when the drill pipe was removed before shutting down the well on December 24. When operations were resumed on December 26, pressure in the well had apparently increased, and the well blew air and salt water from that date until January 1, 1957. Additional pits covering approximately one and one-half acres were constructed to take care of the excess material being blown from the well. There is also evidence to the effect this salt water was blown onto the land beyond the pits. At the time it was discovered that pressure was building up in the well, the question arose in the minds of those in charge as to whether the well should be "shut in." It was the judgment of the drilling contractor and his superintendent to allow the well to blow. This was done in order to reduce the well pressure. Appellant acquiesced in this decision, but testified on this trial that in his opinion at that time, it was not good drilling practice. Despite the testimony of the appellant and the drilling superintendent that extra ordinary care and precaution were used in the drilling operation, the jury's finding was to the contrary. The facts and circumstances surrounding the drilling operations were before the jury. Having considered the entire record, we are of the opinion that the jury's finding complained of is not so contrary or against the overwhelming preponderance of the evidence as to be manifestly wrong or unjust.

■■■ Appellant next contends the first special issue was in the nature of a general charge and was a comment on the weight of the evidence. This issue in-

quired if appellant "failed to use extra ordinary care and precaution" in the drilling of the test well in question. "Extra ordinary care and precaution" was defined as "the use of more care and precaution than ordinary care and precaution, and by ordinary care and precaution is meant that degree of care and precaution which an ordinarily prudent drilling operator would have used under the same or similar circumstances".

Appellant agreed by the terms of the oil and gas lease to use extra ordinary care and precaution. It is appellant's contention the issue of whether appellant failed to use extra ordinary care should not be submitted in one issue, but should be separated into several elements, separately submitted. In our opinion, this contention is without merit. The case was tried on the theory of an alleged breach of contract and not one of negligence. The ultimate issue was whether or not appellant had breached the lease contract by failing to use extra ordinary care and precaution. When the special issue is considered along with the accompanying definition, we are of the opinion it is not subject to appellant's objection. Various acts performed by appellant in the drilling operation would be evidentiary and elements of the ultimate question. The method of submitting special issue number one is in conformity with Rule 279, Texas Rules of Civil Procedure, and the rule thereunder established by the Supreme Court. Grieger v. Vega, 153 Tex. 498, 271 S.W.2d 85. City of Houston v. Lurie, 148 Tex. 391, 224 S.W.2d 871, 14 A.L.R.2d 61. Howell v. Howell, 147 Tex. 14, 210 S.W.2d 978.

Appellant next complains of the trial court's definition of the term "permanent". The court gave the following definition: "The term 'permanent' as used in the foregoing issue does not mean perpetual or forever, but you are instructed that if you find and believe from the evidence that the productivity of the soil has been impaired or destroyed then, and in such event, the injury would be permanent in nature." Appellant objected to the above instruction on the ground it fails to convey the idea the damage to land to be permanent must be durable, lasting and never changing; and further the definition "leaves the jury to believe that if productivity of the soil has been impaired to any extent or any degree" then such damage would be permanent. It is well settled that injury to land may be permanent in law without being perpetual. Fort Worth & N. O. R. Co. v. Wallace, 74 Tex. 581, 12 S.W. 227. Lone Star Gas Co. v. Hutton, (Tex.Com.App.), 58 S.W.2d 19, Williams v. Henderson County Levee Improvement Dist. No. 3, (Tex.Com.App.), 36 S.W.2d 204. General Crude Oil Co. v. Aikin, (Civ.App.), 335 S.W.2d 229, (Refused on other grounds), 162 Tex. 104, 344 S.W.2d 668. In Morton Salt v. Lybrand, (Civ.App.), 292 S.W. 264, (Error dismissed), the rule is stated in the following language:

"Our courts have uniformly held, in cases where it is shown that, by overflow, fire, or other agency, the roots or sod of native or other perennial grasses, fruit or other trees, grape or berry vines, *or the productivity of the soil are impaired or destroyed,* that the injury is permanent in nature, for which the owner is entitled to recover, as damages, the difference in the market value of the land before and after the injury." ( Emphasis added.)

This language was approved by the Commission of Appeals in Williams v. Henderson County Levee Improvement Dist. No. 3, supra. Under these and other authorities therein cited, we conclude the definition given by the trial court was proper.

By virtue of the jury's answers to special issues, the trial court entered judgment for appellees in the amount of $5,848.68, of which sum $4,687.50 was the

amount of damages found by the jury, and $1,161.18 was the amount of interest at six per annum from January 1, 1957, to the date of the judgment, January 8, 1962. The sum of $4,687.50 included $750.00 which was found by the jury to be the reasonable cost of removing slush, mud and basic sediment from the land. The judgment assessed interest on $3,937.50, the amount of damages to the land.

■ Appellant challenges the assessment of interest before judgment on the ground it is a recovery of damages and as such is a jury question. It is well settled that interest is a part of the damages where real property of a determined value is damaged, destroyed or taken on a determined date. Watkins v. Junker, 90 Tex. 584, 40 S.W. 11. Texas Company v. State, 154 Tex. 494, 281 S.W.2d 83. Mayflower Investment Company v. Stephens, (Civ. App.), 345 S.W.2d 786, (Refused, NRE). The record is clear the damages to the land as found by the jury were fixed and determinable in the period from December 26, 1956, to January 1, 1957. Whatever damages inflicted upon the land by appellant's drilling operations occurred during this specific period. Expert testimony was elicited to prove the actual cash value of the land immediately before and immediately after the damages. Under the facts of this case, we are of the opinion the trial court's judgment correctly awarded interest from the date of the damages. State v. Hale, 136 Tex. 29, 146 S.W.2d 731. Trinity & S. Ry. Co. v. Schofield, 72 Tex. 496, 10 S.W. 575.

By cross-assignments, appellees complained of the action of the trial court in failing to grant appellees' motion for pre-emptory instruction; for failing to cancel the oil and gas lease; and in submitting of certain special issues relative to a reformation of the lease.

■ Appellees' motion for pre-emptory instruction was based on a prior judicial admission made by appellant in a prior suit brought by the drilling contractor against appellant in Lubbock County. In defense of the contractor's petition for payment for the drilling of the test well in question, appellant's answer contained allegations to the effect the contractor failed to exercise extra ordinary care in the drilling operation. The trial court excluded this pleading and any evidence pertaining thereto. Texas courts recognize the doctrine of judicial estoppel that holds a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to the assertion sought to be made. Long v. Knox, 155 Tex. 581, 291 S.W.2d 292. See also 31 C.J.S. Estoppel § 121, page 390. It will be noted this doctrine is applicable only if the former pleadings are under oath. Appellant's jurat in the former pleadings above referred to reads: "Before me, the undersigned authority, on this day personally appeared W. W. West, who, being duly sworn, on his oath stated that the statements and the allegations of paragraphs 2 and 4 of the foregoing answer are true in substance and in fact." Paragraph 2 stated the account sued for "is not just or true in whole or in part". Paragraph 4 alleged the failure of consideration. Allegations of the failure to use proper care on the part of the drilling contractor were contained in paragraphs other than in paragraphs 2 and 4, and such allegations were specifically excluded by the wording of the jurat. We conclude the pleading as a whole is not sufficient to invoke the doctrine of judicial estoppel, and as such was not admissible. It follows the trial court was correct in excluding this pleading filed in the former case and all evidence pertaining thereto. The trial court correctly overruled appellees' motion for pre-emptory instruction.

By another cross-assignment appellees urge error in the trial court's failure to cancel the oil and gas lease on the ground appellant failed and refused to tender the delay rentals into court. Appellant admits the delay rentals were timely tendered as they became due, and that appellees refused to accept them on the claim conditions of the lease had been violated, thus having the effect of terminating the lease. Appellant offered in his pleadings to pay all delay rentals due, and prayed that the lease not be terminated. Appellant's timely tender of the delay rentals, even though refused by appellees, was a sufficient tender to keep the lease alive. Spruill v. Lone Star Gas Company, (Civ.App.), 253 S.W. 599, (Error dismissed.). Burt v. Deorsam, (Civ.App.), 227 S.W. 354, (NWH). By timely tendering the delay rentals and filing pleadings which tender all delay rentals due under the lease, appellant was doing all that he was required to do under the terms of the lease. However, as the lease is valid, the refusal of appellees to accept the delay rentals does not release appellant from the payment of all rentals due at this time. Appellee's cross-assignment number two is overruled.

Appellees' last cross-assignment complains of the trial court's action in submitting special issues relative to the reformation of the oil and gas lease in question. The assignment contains four unrelated grounds as the basis for the alleged error. The cross-assignment is clearly multifarious, and as such, is not sufficient to be considered by this court on appeal.

After carefully reviewing this record, we are of the opinion it reflects no reversible error. The judgment of the trial court is accordingly affirmed.

Affirmed.